FRANKLIN ORTIZ RIVERA, ETC. demandantes y peticionarios, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, ETC., demandados; NATIONAL INSURANCE COMPANY, demandada y recurrida.

*Número:* CE-85-801      *Resuelto:* 22 de diciembre de 1989

66

*Ramón Negrón Soto* y *Luis A. Rivera Cabrera,* de *Sweeting, González & Cestero,* abogados de los peticionarios; *Héctor Reichard De Cardona* y *Mayra Sol Meléndez Velázquez,* de *Lasa, Escalera & Reichard,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

El 11 de mayo de 1983 un grupo de cuarenta (40) familias constituidas por unas ciento sesenta y seis (166) personas residentes en la Urbanización Fajardo Gardens se unieron para presentar una demanda de daños y perjuicios por razón de las pérdidas y daños sufridos durante unas inundaciones acaecidas el 13 de mayo de 1982 y el 21 de abril de 1983.

Los demandantes alegaron que las inundaciones se debieron a que el Estado Libre Asociado de Puerto Rico permitió que se ampliara un antiguo puente español, que se canalizara la quebrada Fajardo, que se ensanchara la carretera que bordeaba la urbanización y que se construyeran unos nuevos puentes en contravención a los resultados de los estudios hidrológicos que se prepararon para hacer estas mejoras y que eran requisitos para la aprobación del plano de construcción de la Urbanización Fajardo Gardens. En consecuencia, fueron múltiples las partes demandadas: el Estado Libre Asociado de Puerto Rico, el Municipio de Fajardo, la Sociedad de Ingenieros y Arquitectos Armenteros, Coll y Pietri, los herederos de un causante de dicha Sociedad, Homewood Corp., Fajardo Homes, Inc., Bayamón Builders, Inc. y varias aseguradoras.

Presentada la demanda, los demandados Municipio de Fajardo, Homewood Corp., Belén Pietri, el Estado Libre Asociado de Puerto Rico y Alejandro R. Coll sometieron a cada uno de los demandantes siete (7) pliegos de extensos interrogatorios con aproximadamente novecientos (900) requerimientos de información individuales, los que fueron contestados y notificados a cada una de las partes demandadas. Posteriormente, el 5 de enero de 1984, la codemandada Homewood Corp. notificó un aviso de toma de deposiciones para cada uno de los demandantes que se comenzaron a tomar en agosto de 1984 y se finalizaron el 13 de diciembre de ese mismo año.

Mientras se tomaban dichas deposiciones, el 16 de marzo de 1984 Homewood Corp. presentó demanda contra tercero para traer al pleito a su aseguradora National Insurance Company (National). Posteriormente, el 18 de enero de 1985, mediante enmienda a la demanda original, la parte demandante incluyó a National como codemandada.

National, a quien los demandantes le habían notificado copia de las contestaciones a los interrogatorios sometidos

por los codemandados y que estuvo representada legalmente en la toma de las deposiciones, notificó el 22 de abril de 1985 un pliego de interrogatorios y requerimiento de admisiones dirigido a todos los demandantes y, más adelante, el 13 de mayo de 1985, notificó a ciertos demandantes otro interrogario titulado "Interrogatorio específicamente relacionado a la respuesta número 26 de interrogatorio notificado por el codemandado Municipio de Fajardo a la parte demandante el 28 de junio de 1983".(1)

El 28 de mayo de 1985, en cumplimiento de una orden dictada por el tribunal, los abogados de la parte demandante y National se reunieron para discutir sus diferencias en relación con el descubrimiento de prueba. National insistió en que se contestaran las preguntas 5, 6, 8, 18, 19, 20, 27 y 32 del interrogatorio de 22 de abril de 1985 y la totalidad de los interrogatorios de 13 de mayo de 1985. Los demandantes, mediante "Moción en solicitud de orden protectora y objetando interrogatorios" de 20 de junio de 1985, objetaron los interrogatorios alegando que la información objeto de los interrogatorios había sido prestada en las contestaciones a los interrogatorios anteriores sometidos por los codemandados, los cuales se le habían notificado a National, por lo cual los mismos resultaban hostigantes y opresivos. Se celebró vista para la discusión de dicha moción y el 24 de octubre de 1985 el tribunal de instancia la declaró no ha lugar y ordenó a los demandantes, aquí peticionarios, a que contestaran los interrogatorios en el término de treinta (30) días. Como resultado de esta orden acudieron ante nos los demandantes me-

---

(1) Este interrogatorio fue notificado a los demandantes siguientes: Franklin Ortiz Rivera, Harry Santiago, Tomás Alejandro Estrada, Pablo Cruz Bonilla, José Amauri Rivera, José Ramón Rodríguez Velilla, José R. Martínez Pagán, Gregorio Montañez, Máximo Feliciano, Georgina Reyes Vda. de Aguiar, Lydia E. Rivera Torres, Juan F. Méndez, Miguel Rivas Rivera, Mercedes López, Víctor Fuentes, Carmelo Avillán, Miguel Gautier, Ángel Noel Rivera, Juan Antonio Rosa, Benigno Ramírez y Ramón L. Rosado Pérez.

diante solicitud de *certiorari* y alegaron que erró el tribunal de instancia al declarar no ha lugar a la orden protectora, lo que permitía la sobreutilización de los mecanismos de descubrimiento de prueba.

En auxilio de nuestra jurisdicción, paralizamos los procedimientos en cuanto al descubrimiento de prueba entre los demandantes y National, y concedimos término a la demandada National para que mostrara causa por la cual no debíamos expedir el auto y tomar las providencias siguientes: revocar la orden recurrida para relevar a los demandantes de contestar los interrogatorios por ser irrazonables, opresivos, onerosos, repetitivos y haber sido notificados tardíamente, o en la alternativa, restringir el alcance del interrogatorio a aquellas preguntas que no sean repetitivas o que pudieron haber sido descubiertas por National mientras participaba en el proceso de descubrimiento anterior a ser incluida como demandada y exponer razones por las cuales no debíamos adoptar por vía de interpretación, la norma recogida en la Regla 26(b)(1) federal. La codemandada National ha comparecido. Estamos en condición de resolver la controversia sometida y así procedemos a hacerlo.

I

La multiplicidad de partes, el monto de las cuantías reclamadas, el extenso y complicado descubrimiento de prueba y la complejidad de las controversias planteadas en el caso de autos nos mueven a concluir que estamos ante uno de los llamados casos complejos que por su naturaleza requieren una atención particular por parte de los tribunales en lo referente al descubrimiento de prueba. Así, en *Vellón v. Squibb Mfg., Inc.*, 117 D.P.R. 838, 849–850 (1986), dijimos:

> En casos complejos como el de autos los jueces tienen que mantenerse alertas al potencial que existe para el abuso, ya sea por el uso inadecuado o excesivo de los mecanismos de

descubrimiento. Tienen que estar dispuestos a intervenir mediante la emisión de guías y órdenes apropiadas para conjurar los problemas en sus inicios.

Resulta, pues, indispensable que en este tipo de caso el tribunal, desde su comienzo, identifique los problemas potenciales y tome control del caso. (Citas y escolio omitidos.)

■ En este contexto es que debemos evaluar la procedencia de los interrogatorios objeto de este recurso. El ordenamiento procesal vigente permite un descubrimiento de prueba amplio con dos (2) limitaciones: que la materia objeto del descubrimiento no sea privilegiada y que la misma sea pertinente al asunto en controversia en el pleito.[2] Aun cuando el concepto "pertinencia" en el descubrimiento de prueba es más amplio que el utilizado para resolver problemas evidenciarios, el mismo no es ilimitado. Así, en *General Electric v. Concessionaires, Inc.*, 118 D.P.R. 32, 40 (1986), señalamos:

El concepto pertinencia tiene que interpretarse de manera cónsona con el principio rector de las reglas procesales: lograr la solución de las controversias de forma justa, rápida y económica.

■ Sin embargo, aun cuando la materia objeto del descubrimiento sea pertinente, el tribunal puede emitir órdenes

---

[2] La Regla 23.1(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, en lo pertinente, dispone:

*"23.1 Alcance del descubrimiento*

"El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, de conformidad con las disposiciones de estas reglas, será como sigue:

*"(a) En general.* Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible."

dirigidas a proteger a las partes o a otras personas de hostigamiento, perturbación, opresión y gastos o molestias indebidas en el desarrollo del descubrimiento de prueba.(³)

Las cortes en la jurisdicción federal, mediante el uso de estas órdenes protectoras, comenzaron a contrarrestar el uso excesivo, repetitivo y desproporcionado de los métodos de descubrimiento que surgían como consecuencia del alcance amplio del mismo. N. Waxner, B. Chase y J. Phillips, *Bender's Federal Practice Manual*, Mathew-Bender, 1984, Vol. 1, Sec. 60.2. En consecuencia, para evitar el uso excesivo y redundante de los mecanismos de descubrimiento de prueba, se enmendó la Regla 26(b)(1) de Procedimiento Civil federal, 28 U.S.C., equivalente a la 23.1(a) nuestra, *supra*, para señalar en forma específica las circunstancias en las que la corte debía intervenir para limitar el descubrimiento, y se dispuso que:

> La frecuencia o el alcance del uso de los métodos de descubrimiento relacionados en el inciso (a) se limitará por la corte si la misma determinare que: (i) el descubrimiento solicitado es irrazonablemente acumulativo o repetitivo, o puede obtenerse mediante otro procedimiento más conveniente, menos oneroso o menos costoso; (ii) la parte que solicita el descubrimiento hubiera tenido amplia oportunidad para obtener la información solicitada mediante descubrimiento en el pleito; o (iii) el descubrimiento es indebidamente oneroso o costoso, tomando en consideración las necesidades del caso, la cuantía en controversia, la limitación de los recursos de las partes y la importancia de las cuestiones en disputa en el litigio. La corte

---

(³) La Regla 23.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en lo pertinente, dispone:

"*23.2. Ordenes protectoras*

"A solicitud de parte o de la persona en relación con la cual se utiliza el descubrimiento, y por justa causa, el tribunal podrá emitir cualquier orden que se requiera en justicia para proteger a dicha parte o persona de hostigamiento, perturbación u opresión, así como de cualquier gasto o molestia indebido."

podrá actuar a su propia iniciativa después de una notificación razonable o de acuerdo con una moción a tenor con el inciso (c). Regla 26 de Procedimiento Civil para las Cortes de Distrito de los Estados Unidos, *Práctica Forense Federal*, Ed. Equity, 1987, pág. 46.

Idéntico enfoque se siguió en la Guía 3 de las *Guías propuestas para dirigir la fase del descubrimiento de prueba en casos complejos* preparadas por el Secretariado de la Conferencia Judicial en mayo de 1988, pág. 35, que dispone:

Guía 3 *El alcance del descubrimiento de prueba; sus limitaciones y principios generales*

En la conferencia inicial el juez informará a las partes la necesidad de establecer un esquema uniforme que permita la coordinación y participación efectiva de éstas en el uso de los mecanismos de descubrimiento de prueba, y así viabilizar la pronta, justa y económica solución del caso. El tribunal tomará en consideración los límites y restricciones impuestos al alcance del descubrimiento de prueba, según lo dispuesto en la Regla 23.2 de Procedimiento Civil, en estas guías, o en cualesquiera otras pertinentes al proceso. Esto significa que el descubrimiento de prueba estará supeditado a las siguientes limitaciones o principios generales:

a) la información solicitada no será acumulativa o duplicativa;

b) las partes deben explorar si el descubrimiento solicitado es más fácil de obtener de otras fuentes más accessibles;

c) las partes deben obtener el máximo de beneficios y utilidad de cada método que piensen usar para evitar la duplicación y la redundancia;

d) el descubrimiento solicitado no debe ser oneroso, y debe estar en armonía con las controversias del caso, las cuantías reclamadas, las limitaciones de recursos de las partes y la complejidad de las cuestiones en litigio;

e) el tribunal debe explorar y proporcionar, en consulta con los abogados de las partes, mecanismos para protejer (sic) y

garantizar la confidencialidad de los documentos y testimonios, de acuerdo con lo dispuesto en estas guías.(4)

A la luz de estos criterios procedemos entonces a evaluar los interrogatorios objetos de este recurso. En lo referente al interrogatorio de 22 de abril de 1985, el tribunal de instancia ordenó que se contestaran las preguntas siguientes:

5. Indique la institución escolar a que asisten cada uno de sus hijos al momento de contestar este interrogatorio. (Indicando por separado el nombre del hijo y las instituciones). Diga además la institución escolar a la que han asistido desde 1980 hasta el presente. Incluya nombre y dirección de la escuela, así como el año académico en que su hijo asistió a ésta.

6. Desglose el índice académico de cada uno de sus hijos para los años de 1980 al 1985. Incluya copia de los récords académicos de sus hijos para cada año escolar mencionado.

8. Indique nombres y direcciones de todos y cada uno de los clubes, asociaciones, entidades religiosas y/o cualquier otro grupo o entidad a la cual pertenece usted y/o su esposa y/o sus hijos. Diga la fecha en que se relacionó por primera vez con aquellos grupos mencionados.

18. Admita que la lluvia comenzó a caer de forma constante desde el 20 de abril de 1983.

19. ¿Cómo describe usted la naturaleza de los aguaceros para esa fecha? (Debe contestar a los efectos de si eran fuertes y/o débiles y/o intermitentes y/o constantes, etc.).

_____

(4) Véase *In re: Guías para uniformar el procedimiento de divorcio por consentimiento mutuo y Guías propuestas para dirigir la fase del descubrimiento de prueba en casos complejos*, Resolución de 3 de mayo de 1989, en la cual expresamos:

"Vistos y examinados los informes correspondientes a las *Guías Para Uniformar el Procedimiento de Divorcio por Consentimiento Mutuo* y las *Guías Para Dirigir la Fase del Descubrimiento de Prueba en Casos Complejos* sometidos a la consideración de la Conferencia Judicial en su sesión de mayo de 1988, el Tribunal entiende que las mismas constituyen una valiosa aportación para conferir la mayor uniformidad posible en los dictámenes judiciales y brindar certeza a los ciudadanos y abogados que acuden a los Tribunales reclamando justicia.

"La utilización de estas guías por los Jueces del Tribunal de Primera Instancia es discrecional y en su aplicación a los asuntos ante su consideración ellos deberán atender los hechos particulares del caso de que se trate, así como su recta interpretación del derecho."

20. Con respecto a la alegación del párrafo número 8 de la demanda, indique:

a) ¿Cómo tuvo conocimiento usted por primera vez de que se había desbordado la quebrada Fajardo en el puente número 112? Si se lo informó alguna persona, indique su nombre y dirección.

b) ¿Dónde se encontraba usted a la hora expuesta en su contestación a la pregunta número 17?

c) ¿Quiénes le acompañaban a dicha hora y qué actividad realizaban? Indique nombre y dirección de las personas mencionadas.

27. Explique en detalle la alegación número 20 de su demanda. Desglose por días la pérdida de ingresos alegada. Incluya copia de su planilla de contribución sobre ingresos para los años de 1980 a 1985.

32. Indique si usted en alguna ocasión antes y después de las fechas alegadas en la demanda usted y/o su esposa y/o sus hijos han visitado algún sicólogo, siquiatra o cualquier otro profesional de la salud mental. De contestar en la afirmativa, indique:

a) Fecha de la visita y/o cada una de las visitas.

b) Nombre y dirección del médico que le atendió.

c) Razón por la cual visitó al médico en esa(s) fecha(s).

Petición de *certiorari, Exhibit* 11, págs. 87–91.

Un examen cuidadoso del descubrimiento de prueba efectuado hasta este momento nos mueve a concluir que la parte demandante sólo deberá contestar las preguntas 18, 19 y 20. Las mismas resultan pertinentes a la controversia ya que se dirigen específicamente a obtener información sobre las inundaciones que dieron fundamento a la demanda. Además, la información solicitada no ha sido objeto de interrogatorios anteriores.

■ Las preguntas 5, 6 y 8 que solicitan los nombres de los clubes o asociaciones a los que han pertenecido los demandantes y los nombres de las escuelas a las que han asistido sus hijos con sus correspondientes récord académicos resultan impertinentes a la controversia sobre negligencia y

a la reclamación de daños que se incluyen en la demanda. Ciertamente la materia objeto de estas preguntas no tiene "una posibilidad razonable de relación con el asunto en controversia". *Rodríguez v. Scotiabank de P.R.*, 113 D.P.R. 210, 212 (1982).

■ Finalmente, las preguntas 27 y 32 resultan repetitivas, ya que la información solicitada se ha requerido en interrogatorios anteriores y sus correspondientes contestaciones han sido notificadas a National. Por lo tanto, permitir estas preguntas ocasionaría molestias y gastos indebidos a los demandantes.

La pregunta 27 que solicita a los demandantes que expliquen la pérdida de ingresos alegada en la demanda y solicita copia de las planillas para los años 1980 a 1985 fue cubierta en la pregunta 34 del interrogatorio sometido por Homewood Corp., asegurada de National, el 5 de enero de 1984. En el mismo se le solicitó a cada uno de los demandantes que detallaran los hechos específicos en los que se fundaron para estimar la pérdida de ingresos en quinientos (500) dólares por familia.[5] Igualmente, en las preguntas 41, 42, 43 y 44 del interrogatorio sometido por Belén Pietri a los demandantes en 24 de agosto de 1983 se cuestionó específicamente esta partida.[6]

Finalmente, en la pregunta Núm. 21 del interrogatorio sometido por Homewood Corp. el 5 de enero de 1984 se soli-

---

[5] "34. Refiérase al párrafo 20 de su demanda. Diga:
"A Los hechos específicos en los cuales usted se basa para reclamar la cantidad de $500.00 como pérdida de salario tal y como se alega en el párrafo 20 de la demanda." Petición de *certiorari, Exhibit* 4, pág. 48.

[6] "41. Diga si usted estaba empleado en trabajo renumeratorio para la fecha del accidente.
"42. De ser así, por cada empleo, diga:
  "a) El nombre, dirección y negocio de su patrono;
  "b) Las fechas inclusivas de su empleo;
  "c) La tasa de paga o método por el cual se determinaba su compensación;
  "d) Su compensación bruta, (antes de las deducciones) para la fecha del accidente;
  "e) Su compensación neta por mes para la fecha del accidente.

citó copia de las planillas de los demandantes hasta 1984, las cuales fueron sometidas.

La pregunta 32 que cuestiona a los demandantes si han acudido a tratamiento siquiátrico o sicológico también ha sido cubierta en interrogatorios anteriores. Específicamente, en las preguntas 22 y 29 del interrogatorio sometido por Homewood Corp. el 5 de enero de 1984 se cuestionó si los demandantes habían estado en tratamientos siquiátricos o sicológicos, se solicitaron los récord médicos de esos tratamientos y el currículum vitae de los doctores a cargo del mismo.(⁷)

En conclusión, del interrogatorio notificado por National el 22 de abril 1985 los demandantes sólo deberán contestar las preguntas 18, 19 y 20. Las preguntas 5, 6 y 8 resultan impertinentes y las preguntas 27 y 32 son repetitivas, y el

---

"43. Diga si usted se ha ausentado de su trabajo como resultado de esta alegada ocurrencia.

"44. De ser así, diga:

"a)˙ Cada fecha en que usted se ausentó de su trabajo;

"b) El número total de horas y días perdidos;

"c) Diga si se le pagó durante su ausencia, y de ser así, porqué razón y qué cantidad." Petición de *certiorari, Exhibit* 5, págs. 54–55.

(⁷)"Refiérase al párrafo 24 de su demanda. Diga.

"C Diga si el (sic) ocasión alguna usted ha requerido los servicios y/o ha estado sometido a tratamiento por parte de un *siquiatra*. Si su contestación es en la afirmativa, entonces diga:

"i. Identifique cada uno de los mismos.

"ii. Exponga un *curriculum vitae* completo de todos y cada uno de dichos facultativos, incluyendo pero no limitado a, organizaciones profesionales a las cuales pertenece, número de licencia, educación y experiencia.

"iii. Haga una relación completa y taxativa de todas y cada una de las visitas y/o consultas profesionales que usted ha realizado con dichos facultativos.

"iv. Acompañe, con sus contestaciones a estos interrogatorios, copias fieles y exactas de los records y/o expedientes que mantienen todos y cada uno de dichos facultativos en relación con su persona y/o en relación con el tratamiento que le han dado. Incluya, pero no se limite a, copias de aquellos documentos que demuestren los diagnósticos o prognósticos [sic] en relación con cualquier padecimiento suyo.

"D Conteste los interrogatorios inmediatamente anteriores (c (i) a c (iv)) pero en relación con *sicólogo* que lo haya atendido." Petición de *certiorari, Exhibit* 4, págs. 43–44.

contestarlas ocasionaría gastos y molestias indebidas a los demandantes.

Finalmente, con relación a los interrogatorios sometidos por National el 13 de mayo de 1985 en los que solicitan que los demandantes aclaren sus contestaciones a la pregunta Núm. 26 del interrogatorio notificado por el Municipio de Fajardo el 28 de junio de 1983, concluimos que el mismo no es repetitivo ya que se dirige a aclarar ciertos datos sobre los daños especiales sufridos por distintas propiedades de los demandantes.

La referida pregunta Núm. 26 requería de cada uno de los demandantes que hicieran un desglose de los daños sufridos en sus propiedades, las marcas, los modelos, los números de serie, la descripción, la fecha de adquisición, las reparaciones y el costo de las reparaciones. Los demandantes contestaron esta pregunta en forma de una tabla en la cual para cada una de las propiedades informaban los datos solicitados.

Sin embargo, los interrogatorios notificados por National no se refieren a todas esas propiedades y a los mismos datos solicitados. Se trata de interrogatorios sometidos a 21 de los 39 demandantes y se refieren específicamente a ciertos bienes muebles de los demandantes con el propósito de aclarar los datos sobre la reparación de los mismos.

■ La Guía 20 de las *Guías propuestas para dirigir la fase del descubrimiento de prueba en casos complejos*, ante, específicamente dispone:

Guía 20 *Duplicidad de interrogatorios*

Las partes con intereses, reclamaciones o defensas similares deben evitar la repetición de interrogatorios dirigidos a partes adversas, que contengan preguntas a las que ya se hayan provisto contestaciones previas. Esto no limita el derecho de una parte de requerir contestaciones adecuadas o de cuestionar interrogatorios que estén incompletos, si así fuese el caso.

Precisamente, lo que se trata de buscar en este grupo de interrogatorios es información que no se brindó en las con testaciones anteriores a la pregunta notificada por el Municipio de Fajardo, por lo que es necesario clarificar las controversias en torno a los daños especiales reclamados.

Por todo lo anterior, *se expedirá el auto y se modifica la Orden de 29 de octubre de 1985 a los fines de relevar a los demandantes de contestar las preguntas 5, 6, 8, 27 y 32 del interrogatorio notificado por National el 22 de abril de 1985. Se devolverá el caso para que continúen los procedimientos en forma cónsona con estos pronunciamientos.*

El Juez Presidente Señor Pons Núñez se inhibió.