EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hipólita Rivera Durán y otros<br>        Demandantes-Recurridos<br><br>                 Vs.<br><br>Banco Popular de Puerto Rico<br>        Demandado-Peticionario | Certiorari<br><br>2000 TSPR 144 |

Número del Caso: CC-2000-0104

Fecha: 02/octubre/2000

Tribunal de Circuito de Apelaciones:

                    Circuito Regional IV

Juez Ponente:

                    Hon. Escribano Medina

Abogados de la Parte Peticionaria:

                    Martínez, Odell & Calabria
                    Lcda. Anabelle Rodríguez
                    Lcdo. Juan A. Frau Escudero
                    Lcdo. José G. Díaz Tejera


Abogados de la Parte Recurrida:

                    Bufete Lugo Irizarry
                    Lcda. Oliveliza Lugo
                    Lcdo. Pablo D. Fuentes Torres

Abogados de Mario Gutiérrez y Luz Nereida Rivera:

                    Lcdo. Alfredo Ríos Blás

Materia: Daños y Perjuicios


    Este documento constituye un documento oficial del Tribunal Supremo que está
    sujeto a los cambios y correciones del proceso de compilación y publicación
    oficial de las decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

**Hipólita Rivera Durán y otros**

     **Recurridos**

        **vs.**                  **CC-2000-104**     **CERTIORARI**

**Banco Popular de Puerto Rico**

     **Recurrente**

**OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ**

     **San Juan, Puerto Rico, a 2 de octubre de 2000**

El señor José A. Medina Hernández falleció el 23 de febrero de 1989, dejando entre sus bienes una cuenta de cheques y ahorros en el Banco Popular de Puerto Rico (BPPR). Esta cuenta fue abierta el 25 de septiembre de 1987, siendo el Sr. Medina Hernández la única persona autorizada a realizar transacciones en la misma.

El 11 de julio de 1994, la señora Hipólita Rivera Durán, heredera del referido causante, presentó demanda contra el BPPR por alegadamente haber incumplido dicha institución bancaria el contrato de depósito que tenía con el causante; a esos efectos alegó que dicha institución había actuado de forma negligente al permitir que una persona no autorizada retirara fondos y girara

cheques contra la citada cuenta, por lo que reclamó las cantidades de $38,500.00 y $77,000.00 por concepto de retiros pagados ilegalmente y de beneficios de póliza de seguro dejados de pagar por el BPPR, respectivamente. Además, solicitó la Sra. Rivera Durán la suma de $25,000.00 por los daños emocionales sufridos como resultado de la actuación negligente de la institución bancaria demandada.

El 3 de octubre de 1994, el BPPR contestó la demanda levantando varias defensas afirmativas. Posteriormente, el 30 de junio de 1995, la institución bancaria radicó demanda contra tercero contra Mario Gutiérrez y su esposa Luz Nereida Rivera Durán --hermana de la demandante y sobrina del causante-- alegando que el Sr. Gutiérrez falsificó, maliciosa y fraudulentamente, la firma del causante en cheques, hojas de retiro de fondos y en una carta enviada al BPPR notificando un cambio de dirección. Solicitó el Banco del tribunal que dictara sentencia ordenando a los terceros demandados a satisfacerle cualquier suma de dinero que tuviese que pagar como resultado de la demanda, o, en la alternativa, ordenándoles pagar directamente a la demandante el monto que el tribunal determine en el pleito.

El 16 de agosto de 1999, la demanda radicada fue enmendada para incluir como co-demandantes a Carlos L., Margarita, Eduardo J. y Polianna, todos ellos de apellidos Camacho Rivera.[1] El BPPR contestó la demanda enmendada el 22 de septiembre de 1999, reconvencionando éste contra los nuevos codemandantes. Expuso el Banco, en su reconvención, que éstos cobraron indebidamente la suma de $2,488.48 por concepto de seguro de cuenta, ya que el causante no cualificaba para la póliza de seguro de acuerdo a los términos del convenio de cuenta. En esa misma fecha, solicitó el Banco del tribunal de instancia que emitiera una orden dirigida a las instituciones hospitalarias pertinentes para que fueran liberados y le fueran entregados los récords médicos del causante.[2] En una segunda moción, el Banco informó al tribunal sobre la posibilidad de que la tercera

---

[1] Los co-demandantes incluidos en la demanda enmendada son hijos y herederos del señor Carlos Camacho Cruz, quien a su vez era heredero del causante.

demandada, Luz Nereida Rivera Durán, estuviese incapacitada para enfrentar el proceso judicial, por lo que recomendó que, en caso de una determinación de incapacidad, se le nombrara un defensor judicial.[3]

El 25 de enero de 2000, el BPPR presentó una moción solicitando la suspensión de la vista en su fondo por no haberse expresado el tribunal en torno a las mociones presentadas.[4] Ese mismo día, el Tribunal de Instancia, Sala Superior de Mayagüez, declaró con lugar la solicitud del BPPR y le ordenó a varias instituciones que liberaran y entregaran todos los récords médicos del causante. Respecto a la moción informando sobre posible incapacidad de la tercera demandada, el tribunal la declaró no ha lugar por entender que la misma no procedía automáticamente por una simple expresión o preocupación de un abogado, y, además, por ésta estar debidamente representada por abogado. El BPPR tuvo conocimiento de ambas resoluciones el 31 de enero de 2000.[5]

El 1 de febrero de 2000, el BPPR sometió una moción en solicitud de que se suspendiera la vista en su fondo por carecer de tiempo suficiente para diligenciar la orden sobre récords médicos y examinar la información solicitada. Sostuvo que esta información es indispensable para preparar sus defensas y alegaciones. Ante la negativa del Tribunal de Instancia a posponer la celebración de la vista, el BPPR presentó un recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones, el cual fue denegado mediante resolución emitida el 7 de febrero de 2000. En esa misma fecha, recurrió ante este Tribunal imputándole al foro apelativo intermedio haber errado:

---

[2] El BPPR sostuvo que esta información era necesaria para sustentar los hechos alegados en la reconvención.

[3] El 22 de noviembre de 1999, el BPPR presentó una moción reiterando su interés en que el tribunal evaluara la capacidad de la tercera demandada, Luz N. Rivera Durán. De igual forma, el 21 de diciembre de 1999 sometió un moción reafirmando su solicitud para que se emitiera una orden relacionada con los récords médicos del causante.

[4] La vista estaba señalada para el 9 de febrero de 2000.

[5] La resolución sobre incapacidad fue notificada el 31 de enero de 2000. En esa misma fecha, el BPPR tuvo conocimiento sobre la orden emitida por el tribunal a pesar de no haber sido notificada.

"... al declarar no ha lugar el auto solicitado, en efecto confirmando al Tribunal de Primera Instancia, y permitiendo así la celebración del juicio en su fondo no obstante el caso no estar maduro al haberse expedido las órdenes para obtener los récords médicos, los que contienen evidencia fundamental para la adjudicación del caso en sus méritos, a escasamente cinco (5) días de la vista en su fondo.

... al declarar no ha lugar el recurso solicitado permitiendo así la vista en su fondo no obstante el Tribunal de Primera Instancia haber errado al no haber adjudicado sobre la posible incapacidad de la tercera demandada."

I

Las Reglas de Procedimiento Civil establecen varios mecanismos para permitir a las partes "descubrir, obtener o perpetuar la prueba necesaria para sustanciar sus alegaciones en el acto del juicio". Rafael Hernández Colón, Derecho Procesal Civil, Michie de P.R., 1997, sec. 2801, pág. 220. Estos mecanismos están basados en el principio básico de que, antes del juicio, las partes tienen derecho a descubrir toda la información relacionada con su caso, independientemente de quién la posea. José A. Cuevas Segarra, Práctica Procesal Puertorriqueña, Vol. II, Publicaciones JTS, 1985, pág. 123; 8 Wright, Miller & Marcus, Federal Practice and Procedure, West Publishing Co., 1994, sec. 2001, pág. 41.

Las normas de descubrimiento de prueba persiguen los siguientes propósitos: (1) precisar los asuntos en controversia; (2) obtener evidencia para ser utilizada en el juicio, evitando así sorpresas en esta etapa de los procedimientos; (3) facilitar la búsqueda de la verdad; y (4) perpetuar evidencia. Wright, Miller & Marcus, ante; Rafael Hernández Colón, ante. En esencia, su finalidad es permitir que las partes puedan prepararse para el juicio, de forma tal que tengan la oportunidad de obtener la evidencia necesaria para evaluar y resolver las controversias del caso. Patrick E. Higginbotham, General Provissions Governing Discovery; Duty of Disclosure, 6 Moore´s Federal Practice, 3era ed., Mathew Bender, 1997, sec. 26.02, pág. 26-25.

Respecto al alcance del descubrimiento, este Tribunal ha adoptado la política de que dicho procedimiento debe ser amplio y liberal. Aponte v. Sears Roebuck de P.R., Inc., 129 D.P.R. 1042, 1049 (1992); Lluch v. España Service Sta., 117 D.P.R. 729, 743 (1986); Ades v. Zalman, 115 D.P.R.

514, 518 (1984); <u>Rivera Alejandro</u> v. <u>Algarín</u>, 112 D.P.R. 830, 834 (1982);

<u>García Negrón</u> v. <u>Tribunal Superior</u>, 104 D.P.R. 727, 738 (1976); Wright,

Miller & Marcus, ante, sec. 2007, pág. 94. Esta política tiene el efecto

de facilitar "la tramitación de los pleitos y evita[r] los inconvenientes,

sorpresas e injusticias que surgen cuando las partes ignoran hasta el día

de la vista las cuestiones y los hechos que en realidad son objeto del

litigio". <u>Sierra</u> v. <u>Tribunal Superior</u>, 81 D.P.R. 554, 560 (1959). Además,

permite a las partes precisar con exactitud los hechos en controversia,

pues en nuestro sistema procesal el propósito de la demanda es notificar

a grandes rasgos cuáles son las reclamaciones y defensas de las partes.

*Id.*

En este sentido, nuestro ordenamiento solamente establece dos

limitaciones: que la información objeto del descubrimiento no sea

privilegiada y que la misma sea pertinente a la controversia. <u>Medina</u> v.

<u>M.S. & D. Química P.R., Inc.</u>, 135 D.P.R. 716, 730-31 (1994); <u>Ortiz Rivera</u>

v. <u>E.L.A., National Ins. Co.</u>, 125 D.P.R. 65, 70 (1989); <u>General Electric</u>

v. <u>Concessionaires, Inc.</u>, 118 D.P.R. 32, 38-39 (1986). Estas limitaciones

surgen de la Regla 23.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la

cual dispone:

> "El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, de conformidad con las disposiciones de estas reglas, será como sigue:
> (a) En general. <u>Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente</u>, ya se refiera a la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción en que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible." (Énfasis nuestro)

Para estos efectos, y según se desprende de la propia Regla, el concepto

de "pertinencia" es más amplio que el utilizado en la resolución de

problemas evidenciarios. Véase <u>General Electric</u> v. <u>Concessionaires, Inc.</u>,

ante, pág. 40.

El esquema adoptado por nuestras reglas deja en manos de los abogados

el trámite del descubrimiento, para así fomentar una mayor flexibilidad

y minimizar la intervención de los tribunales en esta etapa procesal.

Aponte v. Sears Roebuch de P.R., Inc., ante; Lluch v. España Service Sta., ante. No obstante, los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. Martínez Rivera v. Tribunal Superior, 85 D.P.R. 1, 13 (1962). Véanse también Machado Maldonado v. Barranco Colón, 119 D.P.R. 563, 566 (1987); Rivera v. Tribunal Superior, 99 D.P.R. 276, 278 (1970).[6] De este modo, se elude la posibilidad de que cualquiera de las partes abuse de la utilización de los mecanismos de descubrimiento de prueba.[7]

Como consecuencia de la discreción que tienen, los tribunales de instancia quedan facultados para modificar el término establecido por la Regla 23.4 para concluir el descubrimiento de prueba, según las circunstancias particulares de cada caso. Lluch v. España Service Sta., ante, pág. 742.[8] En el ejercicio de esta facultad, los tribunales deberán hacer un balance "entre dos intereses de gran importancia para el adecuado desenvolvimiento de la labor de impartir justicia a través del sistema

---

[6] La discreción del foro de instancia no se limita a la etapa de descubrimiento de prueba, sino que se extiende a todos los procedimientos, pues el principio rector en todo nuestro ordenamiento procesal es lograr que los casos sean resueltos de forma justa, rápida y económica. Rivera Rivera v. Insular Wire Products, Corp., res. el 24 de mayo de 1996, 140 D.P.R. ___ (1996), 96 JTS 76, pág. 1172; Unisys v. Ramallo Brothers, 128 D.P.R. 842, 863 n.8 (1991). Véase también la Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Conforme a esta norma, los cánones de ética judicial establecen que los jueces deberán intervenir durante el curso de cualquier procedimiento "para evitar dilaciones injustificadas y para esclarecer cualquier extremo o impedir una injusticia". Canon XIV de Ética Judicial, 4 L.P.R.A. Ap. IV-A.

[7] Para evitar este abuso, y así proteger a cualquiera de las partes de hostigamiento, perturbación, opresión, gasto innecesario o molestia indebida, las reglas autorizan a los tribunales a emitir órdenes para regular el descubrimiento. Regla 23.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse también, Rafael Hernández Colón, ante, sec. 2808, págs. 226-29; Ades v. Zelman, ante, pág. 523.

[8] La Regla 23.4 de Procedimiento Civil dispone un término directivo de 60 días para concluir el descubrimiento de prueba, el cual comenzará a correr a partir de la notificación de la contestación a la demanda. Véase Lluch v. España Service Sta., ante, pág. 742.

judicial: de una parte deberán garantizar la pronta solución de las controversias, y de otra, velar por que las partes tengan la oportunidad de llevar a cabo un amplio descubrimiento de forma tal que en la vista en su fondo no surjan sorpresas." *Id.*, págs. 742-43.[9]

No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Id.*, pág. 745. La tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. Pueblo v. Dávila Delgado, res. el 20 de mayo de 1997, 143 D.P.R. ___ (1997); 97 JTS 68, p. 1011 n.15; Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211 (1990); Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964).

En el caso de autos, el 22 de septiembre de 1999 el BPPR solicitó del tribunal que emitiera una orden dirigida a las instituciones pertinentes, para que se le permitiera descubrir la información contenida en los récords médicos del causante. Posteriormente, reiteró su petición el 21 de diciembre de ese mismo año. El Tribunal de Instancia emitió la orden solicitada el 25 de enero de 2000, notificando la misma el 31 de enero. La vista estaba señalada para el 9 de febrero, por lo que el BPPR contaba con tan sólo 9 días para diligenciar la orden y evaluar la evidencia obtenida. Ante esta situación, el 1 de febrero el BPPR radicó una moción solicitando la posposición de la vista. El foro de instancia declaró sin

---

[9] En lo que respecta a esta facultad --la de alterar el término para completar el descubrimiento de prueba--, la discreción del foro judicial se limita a extender o reducir el término. Esto implica que en casos ordinarios los tribunales no pueden negar a una parte la oportunidad de realizar descubrimiento, cuando dicha opción ha sido ejercida dentro del término dispuesto por las reglas. "Claro está, ello no afecta la facultad de regular su extensión en orden a objeciones de onerosidad, opresión, privilegio u otras razones válidas". Machado Maldonado v. Barranco Colón, ante.

lugar la moción, no obstante haber tardado alrededor de cuatro meses para emitir la orden.

Como indicáramos anteriormente, el fin perseguido por el descubrimiento de prueba es permitir a las partes obtener información necesaria para la preparación del juicio, de modo que puedan precisar los asuntos en controversia y descubrir la verdad de lo ocurrido. Para dar cumplimiento a este objetivo, los tribunales deben conceder un tiempo razonable para que ambas partes puedan completar su descubrimiento, evaluar la información obtenida, y así estar en mejor posición de presentar su caso. En la controversia ante nuestra consideración, el BPPR demostró que existía justa causa para extender el descubrimiento y posponer la celebración del juicio en su fondo. De igual forma, no surge del expediente que haya incurrido en alguna actuación negligente. Debido a ello, resolvemos que el Tribunal de Instancia actuó de forma arbitraria y caprichosa al no posponer la celebración de la vista y extender el término para completar el descubrimiento de prueba.[10] En el balance de intereses, consideramos que esta es una solución justa pues no podemos penalizar a una parte por el atraso de los tribunales de instancia en atender y resolver las mociones ante su consideración.

II

En su segundo señalamiento de error, el BPPR sostiene que el Tribunal de Instancia debió evaluar, antes de la celebración de la vista, la capacidad de la tercera demandada Luz Nereida Rivera Durán. Según surge del recurso, dicha petición está basada en una deposición tomada al tercero demandado Mario C. Gutiérrez Pérez, donde éste declaró que su esposa, Luz Nereida Rivera Durán, padece de la enfermedad de Alzheimer. El BPPR aduce que esta declaración es más que fundamento razonable para que el tribunal evalúe la capacidad mental de la tercera demandada, pues esta condición tiende a afectar la memoria y capacidad de las personas que la padecen.

Como norma general, en nuestro sistema de derecho existe una presunción de sanidad o capacidad mental. Jiménez v. Jiménez, 76 D.P.R.

718, 733 (1954). Véanse también <u>Pueblo</u> v. <u>Marcano Pérez</u>, 116 D.P.R. 917, 927 (1986); <u>Pueblo</u> v. <u>Alsina</u>, 79 D.P.R. 46, 60 (1956). Dicha capacidad puede quedar restringida por diversas condiciones, tales como la minoría de edad, la demencia y la prodigalidad, entre otras. Estas condiciones son solamente <u>restricciones a la capacidad de obrar y no prohibiciones</u>, por lo que pueden ser subsanadas mediante medios supletorios. Art. 25 del Código Civil, 31 L.P.R.A. sec. 82; José Castán Tobeñas, <u>Derecho Civil Español, Común y Foral</u>, 14ta ed. rev., Madrid, Ed. Reus, 1984, Tomo 1, Vol. II, pág. 165.[11]

La incapacidad de una persona solamente puede ser solicitada por el cónyuge, los parientes del presunto incapaz y el fiscal. Véanse Arts. 181 y 182 del Código Civil, 31 L.P.R.A. secs. 704-705. Por lo tanto, generalmente, una parte en un pleito no puede solicitar al tribunal que declare incapaz a la parte contraria. No obstante, a partir de la aprobación de las Reglas de Procedimiento Civil de 1979, se impuso al demandante, su abogado o la persona que diligencia el emplazamiento, <u>la obligación</u> "de informar al tribunal la condición mental del demandado, cuando este hecho es de su conocimiento o tiene motivos fundados para así creerlo, de suerte que, el tribunal proceda a tomar las medidas necesarias para determinar la cuestión de capacidad mental, en su caso, nombrando un defensor 'ad

---

[10] Respecto al carácter discrecional de la suspensión o posposición de un juicio, véase <u>Sucn. Pagán Lozada</u> v. <u>Berríos Berdecía</u>, 84 D.P.R. 624, 628 (1962).

[11] Uno de los medios establecidos por el Código Civil para subsanar la falta de capacidad mental es el nombramiento de un tutor. Véase 31 L.P.R.A. sec. 661 *et seq.* Para que dicha acción proceda, deberá preceder una declaración judicial de que la persona está incapacitada para administrar sus bienes, pues, como indicáramos anteriormente, existe una presunción de sanidad o capacidad mental. Art. 180 del Código Civil, 31 L.P.R.A. sec. 703. Una vez declarada incapaz judicialmente, las Reglas de Procedimiento Civil exigen que la persona comparezca por medio de su tutor, quedando así subsanada su incapacidad. Regla 15.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. La parte demandante tendrá que entregar copia del emplazamiento tanto a la parte como a su tutor. Regla 4.4(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Este requisito es de cumplimiento estricto, pues de lo contrario el tribunal no adquirirá jurisdicción sobre la persona del demandado. <u>First Bank of Puerto Rico</u> v. <u>Inmobiliaria Nacional, Inc.</u>, res. el 2 de marzo de 1998, 98 TSPR 18, 98 JTS 18, pág. 599; <u>Rodríguez</u> v.

litem', según establece la Regla 15.2(b) de Procedimiento Civil". Comité de Procedimiento Civil, Informe del Secretariado de la Conferencia Judicial sobre las Reglas de Procedimiento Civil Propuestas por el Comité de Procedimiento Civil, Nov. 1978, pág. 12. Dicha obligación fue incorporada a las Reglas de Procedimiento Civil como resultado de la decisión emitida por este Tribunal en Hernández v. Zapater, 82 D.P.R. 777 (1961).

A estos efectos, la Regla 4.4(c) de Procedimiento Civil fue enmendada para disponer que: "En todos los demás casos en que el demandante, su abogado o la persona que diligencie el emplazamiento tenga fundamento razonable para creer que la persona a ser emplazada está incapacitada mentalmente, deberá notificarlo al tribunal para que éste proceda de acuerdo a lo dispuesto en la Regla 15.2(b)". (Énfasis nuestro) 32 L.P.R.A. Ap. III. Según surge del historial legislativo, y del texto de la Regla 4.4(c), dicha obligación no se limita a la etapa previa o coetánea al emplazamiento, sino que es una continua fijada al demandante, su abogado o la persona que diligencia el emplazamiento. Véase Comité de Procedimiento Civil, ante. Así, de existir un fundamento razonable en una etapa posterior al emplazamiento para creer que la parte demandada está incapacitada, habrá una obligación de notificarlo al tribunal.[12]

Una vez notificado el tribunal de instancia sobre la posibilidad de que un demandado esté incapacitado, y existiendo fundamento razonable para ello, vendrá obligado dicho foro a hacer una determinación sobre el estado mental de la parte. Regla 15.2(b) de Procedimiento Civil, 32 L.P.R.A. Ap.

---

Nasrallah, 118 D.P.R. 93, 98 (1986); Pagán v. Rivera Burgos, 113 D.P.R. 750, 754 (1983).

[12] El incumplimiento de esta obligación no priva al tribunal de jurisdicción, pues la Regla 4.4(c) de Procedimiento Civil no dispuso un procedimiento particular para emplazar a una persona incapacitada no declarada judicialmente como tal ni recluida en una institución para el tratamiento de enfermedades mentales. Véase Regla 4.4(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Debido a ello, "la jurisdicción sobre una persona loca puede ser obtenida ordinariamente por el mismo procedimiento como si fuera cuerda". Hernández v. Zapater, ante, pág. 798. Véase también 53 Am. Jur. 2d Mentally Impaired Persons sec. 170 (1996).

III.[13] Basado en esta determinación, decidirá el tribunal si procede o no el nombramiento de un defensor judicial a la parte.[14] *Id.* Contrario a la determinación sobre el estado mental --la cual es obligatoria en estos casos--, la decisión de nombrar un defensor judicial es una que estará sujeta a un criterio de conveniencia, según se desprende del texto del Inciso (b) de la Regla 15.2.[15] Debido a ello, el tribunal podrá no tomar dicha acción aún cuando haya determinado que la persona está incapacitada, pues tiene la discreción de establecer cualquier otra medida para proteger los intereses de esta parte,[16] la cual determinación estará guiada por el principio rector de todo nuestro ordenamiento procesal de lograr que los casos sean resueltos de una forma justa, rápida y económica. Véase escolio 6, ante.

En el caso ante nuestra consideración, el BPPR presentó una moción notificando al tribunal sobre la posibilidad de que la tercera demandada, Luz Nereida Rivera Durán, estuviese incapacitada. El Tribunal de Instancia

---

[13] El inciso (b) de la Regla 15.2 de Procedimiento Civil dispone: "En los casos previstos en la última oración de la Regla 4.4(c) y en la Regla 22.2, el tribunal determinará sobre el estado mental de la parte y, si es conveniente y procede, el nombramiento de un defensor judicial." (Énfasis nuestro.) 32 L.P.R.A. Ap. III.

[14] Un defensor judicial es un tutor especial que se nombra a un menor o incapacitado para que le represente en un pleito específico. Fernández Martínez v. Tribunal Superior, ante, pág. 758.

[15] Previamente hemos señalado que el nombramiento de un defensor judicial es materia procesal. Hernández v. Zapater, ante, pág. 801; Tyrell v. Saurí, ante; Trueba v. Matínez, 33 D.P.R. 461, 474 (1924).

[16] La Regla 17 de Procedimiento Civil Federal dispone claramente sobre la discreción de los tribunales de distrito para nombrar un defensor judicial. Al respecto, el inciso (c) de esta disposición establece: "The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person". (Énfasis nuestro) Fed. R. Civ. P. 17(c). Sin embargo, en aquellos casos en que determine no nombrar un defensor judicial, deberá tomar alguna otra medida para proteger los intereses del incapacitado. Véase Gardner by Gardner v. Parson, 874 F.2d 131, 140 (1989).

declaró no ha lugar la moción por entender que la misma no procedía automáticamente por una simple expresión o preocupación de un abogado y, además, por ésta estar debidamente representada por abogado. A base de los hechos presentados, resolvemos que erró dicho foro judicial al no evaluar la condición mental de la antes mencionada tercera demandada.

Conforme lo expresado anteriormente , cuando exista fundamento razonable para creer que un demandado está incapacitado y el tribunal sea notificado sobre tal hecho, éste vendrá obligado a evaluar el estado mental del demandado. Ello resulta ser un imperativo del debido proceso de ley.[17] En la controversia bajo nuestra consideración, el BPPR advino en conocimiento de que la tercera demandada posiblemente padecía de la condición de Alzheimer; hecho que, a nuestro juicio, constituye un cuestionamiento de la "capacidad mental" de dicha persona. Además, notificó de esta situación al tribunal, por lo que concluimos que era obligación de dicho foro considerar su estado mental antes de la celebración del juicio.

Finalmente, es importante señalar que el hecho de que la tercera demandada estuviese representada por abogado no exonera al tribunal de evaluar su condición mental y de tomar las medidas necesarias. Adviértase que el simple hecho de estar representada por un abogado no implica que estén debidamente protegidos los intereses del incapacitado. Véase 6A Wright, Miller & Marcus, Federal Practice and Procedure, West Publishing Co., 1990, sec. 1570, pág. 503-504.

---

[17] El Debido Proceso de Ley, en su vertiente procesal, impone al Estado la obligación de garantizar un procedimiento justo y equitativo al interferir con los intereses de libertad y de propiedad de un individuo. Al aplicar este principio, cada caso deberá ser evaluado a base de sus circunstancias particulares. Partido Acción Civil v. E.L.A., res. el 25 de febrero de 2000, 2000 TSPR 29, 2000 J.T.S. 33, pág. 682; Rivera Rodríguez & Co. v. Lee Stowell, 133 D.P.R. 881, 887 (1993). De conformidad con este principio constitucional, el tribunal vendrá obligado a evaluar el estado mental de un demandado, siempre que se cumplan los requisitos antes expresados, pues de esa forma se garantiza un proceso justo y equitativo tanto a éste como al demandante.

Por los fundamentos antes expresados, se expide el auto y se dicta Sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al Tribunal de Instancia, Sala Superior de Mayagüez, para la continuación de los procedimientos de conformidad con lo antes expresado.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hipólita Rivera Durán y otros

    Recurridos

        vs.                              CC-2000-104      CERTIORARI

Banco Popular de Puerto Rico

    Recurrente

SENTENCIA

San Juan, Puerto Rico, a 2 de octubre de 2000

    Por los fundamentos expuesto en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto y se dicta Sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al tribunal de instancia para la continuación de los procedimientos ulteriores conforme lo aquí expresado.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

                            Isabel Llompart Zeno
                            Secretaria del Tribunal Supremo