Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| CAROL ELIZABETH VIVONI BEATY<br><br>Peticionaria<br><br>v.<br><br>ANNETTE CHRISTINE VIVONI BEATY<br><br>Recurrida | KLCE202400290 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2022CV05839<br><br>Sobre: SUCESIONES; SOLICITUD DE REMEDIOS PROVISIONALES EN ASEGURAMENTO DE SENTENCIA |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, a 22 de abril de 2024.

Comparece ante *nos* Carol Vivoni Beaty (Recurrente) mediante recurso de *Certiorari* presentado el 7 de marzo de 2024 y nos pide que revisemos la *Resolución* emitida el 4 de febrero de 2024 y notificada el 6 de febrero de 2024 por Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de San Juan. Mediante dicha *Resolución* el foro primario extendió el término del cargo de ejecutor, determinó que los informes presentados cumplían con las exigencias del Código Civil de 2020, *infra,* y emitió varias órdenes con el fin de continuar los procedimientos de partición del caudal.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* para confirmar la *Resolución* del foro primario.

Número Identificador

SEN2024 _____

**I.**

El 30 de junio de 2022, la Apelante presentó *Demanda* en la cual alegó que sus tres hermanos, Annette Vivoni Beaty, Pedro Vivoni Beaty y María Vivoni Beaty (Recurridos), violentaron las disposiciones del Código Civil de 2020, *infra*, sobre las responsabilidades del cargo de ejecutor testamentario que en conjunto ejercen sobre el caudal de su padre, el Sr. Pedro Vivoni Alcaraz quien falleció el 5 de noviembre de 2021. Dentro de sus alegaciones, solicitó como remedio que fueran removidos del cargo y que el TPI nombrara un Comisionado con cargo al caudal para que lleve a cabo las funciones de administración, custodia, inventario, avalúo y partición de los bienes. Además, solicitó remedios provisionales mientras se atienden las controversias ante el foro primario.

Antes de que se contestara la *Demanda*, los Recurridos presentaron varias mociones de desestimación, ante esto, se celebró una vista el 25 de octubre de 2022. Luego de mociones de reconsideración y sus respectivas oposiciones, y el TPI dictó *Sentencia* el 17 de enero de 2023, en la cual se desestimó la demanda en su totalidad por entender el foro primario que la Recurrente no expuso aleaciones que justificaran la concesión de algún remedio. Luego de varios trámites procesales, el foro primario notificó el 9 de marzo de 2023 una *Sentencia Enmendada*, no obstante, reiteró su determinación de desestimar la *Demanda*. De esa *Sentencia Enmendada*, la Recurrente apeló ante este foro el 10 de abril de 2023. Consecuentemente, esta Curia emitió una *Sentencia* el 12 de junio de 2023 con la codificación alfanumérica KLAN202300294, en la cual revocó el foro primario por entender que no procedía la desestimación del pleito.

Dictaminó este foro que, hasta la presentación de la *Demanda*, los Recurridos habían incumplido con su deber de presentar informes trimestrales sobre las gestiones realizadas como ejecutores del caudal de su padre. Asimismo, señaló que no fue hasta después de presentada la *Demanda* que los Recurridos notificaron al TPI que habían completado el inventario. Este Tribunal expresó que en los casos donde existe conflicto entre herederos en relación con la administración del caudal, se requerirá que el foro primario ejerza un rol supervisor. Añadió que, de acuerdo con nuestro Código Civil, para poder prorrogar el término de ejecutor por encima de los dos años, el TPI deberá celebrar una vista evidenciaria sobre la realidad del caudal y velar que se salvaguarden los derechos de todos los herederos. Esta Curia ordenó: (1) que los Recurridos contestaran la *Demanda* y rindan un informe detallado de lo que han hecho y lo que falta por hacer con relación a la administración del caudal, del cual se entregará copia a cada heredero que no sea ejecutor; (2) que el TPI mantenga el intercambio de información entre los herederos con el fin de armonizar los intereses para que se logre lo antes posible la partición de la herencia; (3) y la celebración de una vista evidenciaria, para que entonces el TPI determine si procede que se prorrogue el término del cargo de ejecutor.

Luego de varios trámites procesales, el foro primario celebró una vista el 30 de enero de 2024. Posteriormente notificó una *Resolución* el 6 de febrero de 2024 en la cual recogió las siguientes determinaciones de hechos: (1) los Recurridos fueron nombrados Ejecutores Universales mediante testamento abierto otorgado mediante Escritura Núm. 148 el 3 de septiembre de 2021 ante el Notario Ignacio Arbona Arbona, en el cual fueron designados como ejecutores conjuntamente sin el requisito de fianza y sin limitación de tiempo; (2) los Recurridos aceptaron los cargos de ejecutores el 17 de noviembre de 2021, (3) hubo un pacto extrajudicial de

extensión del término en el 2022; (4) el TPI expidió las cartas testamentarias el 13 de abril de 2022; y (5) el 16 de noviembre de 2023 los Recurridos solicitaron al TPI, al amparo del Art. 1755 del Código Civil, *infra*, extender el término hasta el 18 de mayo de 2024.

En cuanto a los argumentos presentados en la vista evidenciaria, el foro primario hizo una serie de conclusiones de derecho. Comenzó declarando que el alcance o forma del deber de informar de los ejecutores no está particularmente definido, por tanto, es su entender que los informes presentados hasta la actualidad cumplen con los requisitos mínimos de mantener informados a los herederos. Añadió que si la Recurrente desea tener acceso a información adicional a la que se encuentra en los informes, deberá hacerlo mediante un proceso de descubrimiento de prueba, según la Regla 23 de las de Procedimiento Civil, 32 LPRA, Ap. V. R. 23, pues las Reglas de Procedimiento Civil aplican en todo procedimiento civil, incluyendo el caso de epígrafe, 32 LPRA, Ap. V. R. 1. En cuanto al término del cargo de ejecutor, el foro entendió que se calcula a partir del momento que las cartas testamentarias fueron expedidas, entiéndase el 13 de abril de 2022, así que el cargo vence el 13 de abril de 2024. Dejándose llevar por la *Sentencia* emitida por este Tribunal (KLAN202300294), que constituye la ley del caso, el foro primario dictaminó que las actuaciones de los ejecutores, según enmarcadas en los informes, no exceden la capacidad conferida en el testamento. Finalmente, ordenó que, entre el 13 de abril de 2024, y hasta que se dicte resolución en la vista evidenciaria programada para el 30 de abril, y 4 y 7 de mayo de 2024, los ejecutores podrán continuar con los actos de administración que no requieran la enajenación de bienes.

Inconforme, la Recurrente acude ante nos y alega que el foro primario cometió los siguientes señalamientos de error:

**Erró el TPI al determinar que el término que tiene los ejecutores para realizar su encomienda comienza a decursar desde que suscribieron carta testamentaria y no desde que aceptaron el cargo.**

**Erró el TPI al determinar que los exiguos informes producidos por los demandados ejecutores que obran en récord constituyen un rendimiento de cuentas adecuado y detallado a tenor con el Art. 1767 del Código Civil 2020**

**Erró el TPI al determinar que, la demandante, para lograr que los demandados ejecutores le provean información y documentos atinentes al ejercicio de administración/inventario/avalúo/albaceazgo/partición sobre el caudal del causante en cuanto al que ella es heredera, tiene que obtenerlos a través de mecanismos de descubrimiento de prueba**

**Erró el TPI al no tramitar este caso de acuerdo a las directrices expuestas por este Honorable Foro en la sentencia revocatoria emitida en el caso KLAN202300294**

Este Tribunal, mediante *Resolución* del 14 de marzo de 2024, otorgó un término de veinte (20) días para que los Recurridos presentaran su oposición al recurso. Antes de que esto ocurriera, compareció nuevamente la Recurrente mediante *Moción en Auxilio de Jurisdicción*. En esta nos solicitó que paralicemos el caso ante el TPI y se ordenara a los Recurridos detener cualquier gestión que estén realizando como ejecutores sobre el caudal del Sr. Pedro Vivoni Alcaraz hasta que esta Curia disponga del recurso de *certiorari*. Mediante *Resolución* del 20 de marzo de 2024, este Tribunal otorgó un término de dos (2) días para que los Recurridos presenten la correspondiente oposición a la *Moción de Auxilio de Jurisdicción*. Los Recurridos presentaron *Moción Conjunta en Oposición a Moción en Auxilio de Jurisdicción* el 25 de marzo de 2024. Mientras tanto, la oposición al recurso de *certiorari* fue finalmente presentada el 4 de abril de 2024. Posteriormente, este Tribunal declaró *No Ha Lugar* la *Moción de Auxilio de Jurisdicción* presentada por la Recurrente el 12 de abril de 2024. Con el beneficio de los escritos de ambas partes, procedemos a exponer el marco jurídico.

## II.

### A.  *Certiorari*

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros,* 2023 TSPR 65, 212 DPR ___ (2023). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *800 Ponce de León Corp. v. AIG,* 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra.* Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León Corp. v. AIG, supra.* No obstante, la discreción judicial para expedir o no el auto de *certiorari*s olicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

A esos efectos, la Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V) limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari.* Véase, *Scotiabank of PR v. ZAF Corp.,* 202 DPR 478, 486-487 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra,* dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios,

anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación*, 165 DPR 311, 322 (2005); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra.* En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra*, pág. 918.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago, supra*, pág. 581; *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

**B.     Cargo de Ejecutor**

El Título VI del Libro de Sucesión por Causa de Muerte del Código Civil del 2020, 31 LPRA sec. 5311, *et seq.*, intitulado *Los Ejecutores de la Herencia*, regula la figura del ejecutor. El Artículo 1728 define el ejecutor como "la persona natural o jurídica encargada de realizar actos en beneficio de la herencia o de hacer la partición", 31 LPRA sec. 11491, mientras que el Artículo 1731 establece los tipos de clasificaciones e los ejecutores, entiéndase el ejecutor universal o particular, los cuales pueden ser designados para que actúen individual, conjunta o sucesivamente. 31 LPRA sec. 11494.

El cargo de ejecutor es uno voluntario y su aceptación puede ser expresa, tácita o legal. 31 LPRA sec. 11541-11542. Un ejecutor

acepta su puesto expresamente mediante documento público o privado, mientras que una aceptación tácita ocurre cuando realiza actos que suponen necesariamente la voluntad de aceptar. *Id.* Finalmente, la aceptación es legal cuando transcurren 15 días desde que se requiere al designado que acepte o repudie, y este no actúa. *Id.*

El artículo 1752 explica que la duración del cargo, cuando no se ha fijado plazo es de un (1) año desde la aceptación, o desde que culmine el litigio. 31 LPRA sec. 11543. No obstante, este término puede ser prorrogado por los herederos. El articulo 1754 aclara que "[l]os herederos pueden, por unanimidad, prorrogar el plazo del ejecutor por el tiempo que estimen necesario, pero si el acuerdo es solo por mayoría, la prórroga no puede exceder de un (1) año. 31 LPRA sec. 11545. El Código Civil también provee para que el Tribunal, dentro de su discreción, prorrogue el término. El Artículo 1755 expone que "[s]i transcurrido el plazo señalado no se ha cumplido aún la voluntad del testador, el tribunal puede conceder una prórroga por el tiempo que sea necesario, conforme a las circunstancias del caso". 31 LPRA sec. 11546.

En cuanto a las obligaciones del ejecutor, el Artículo 1764 indica que "el ejecutor tiene la obligación de realizar el inventario de los bienes, de rendir las cuentas y de cumplir aquellas otras obligaciones impuestas por el testador o por el tribunal". 31 LPRA sec. 11573. Para realizar esta labor "debe comenzar a formar el inventario de los bienes pertenecientes a la sucesión dentro de los treinta (30) días de la aceptación de su cargo y debe concluirlo dentro de los próximos sesenta (60) días a partir de haber comenzado el inventario". 31 LPRA sec. 11572. Sin embargo, el artículo 1766 permite que este término sea prorrogado. 31 LPRA sec. 11573. "Los herederos pueden prorrogar unánimemente el plazo de sesenta (60) días para formar el inventario. En defecto de acuerdo

unánime, el tribunal puede prorrogar este plazo, si existe justa causa. En este último caso, la prórroga no debe exceder de seis (6) meses". *Id.*

Artículo 1767 regula la rendición de cuentas, este exige que "[e]l ejecutor debe rendir cuentas trimestrales por escrito y de forma detallada a los herederos. También debe rendir una cuenta final una vez hayan transcurrido tres (3) meses de la conclusión del encargo". 31 LPRA sec. 11574. Los comentarios de este artículo añaden que "[e]s importante que el ejecutor rinda las cuentas detalladas y justificadas con evidencia (comprobantes, recibos, estados de cuenta, etc.), de modo que pueda corroborarse su certeza, para que quien no esté de acuerdo con las cuentas (los herederos, los legatarios, los acreedores u otros) pueda incoar la acción judicial correspondiente".[1]

## C.      **Descubrimiento de Prueba**

La Reglas de Procedimiento Civil establecen varios mecanismos para permitir a las partes "descubrir, obtener o perpetuar la prueba necesaria para sustanciar sus alegaciones en el acto del juicio". Rivera Durán v. Banco Popular de P.R., 152 DPR 140, 151-152 (2000). El fin práctico de esos mecanismos, es que las partes tengan derecho a descubrir toda la información relacionada con su caso, independientemente de quién la posea. Así pues, el esquema adoptado por nuestras reglas deja en manos de los abogados y abogadas el trámite del descubrimiento, para así fomentar una mayor flexibilidad y cooperación entre las partes. Lluch v. España Service Sta., 117 DPR 729 (1986).

Asimismo, las normas de descubrimiento de prueba persiguen los siguientes propósitos: (1) precisar los asuntos en controversia, (2) obtener evidencia para ser utilizada en juicio, evitando así

---

[1] https://www.oslpr.org/c%C3%B3digo-civil-2020.

sorpresa en esta etapa de los procedimientos, (3) facilitar la búsqueda de la verdad y (4) perpetuar la evidencia. Véase, Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros, 2023 TSPR 65, 211 DPR ___ (2023). En otras palabras, lo que se busca es permitir que las partes puedan prepararse para el juicio, de forma que tengan la oportunidad de obtener evidencia necesaria para evaluar y resolver las controversias de su caso.

Es importante señalar que, si bien es cierto que nuestro máximo Foro ha interpretado que el mecanismo de descubrimiento de prueba debe ser amplio y liberal, también ha reconocido que éste no es ilimitado o irrestricto. Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros, supra. Véase, además, Cruz Flores et al. v. Hosp. Ryder et al., 210 DPR 465 (2022); McNeil Healthcare v. Mun. Las Piedras II, 206 DPR 391 (2021). Sobre el particular, la Regla 23.1 de Procedimiento Civil (32 LPRA Ap. V) dispone lo siguiente:

> El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue: (a) En general. Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible [...].

Cónsono con lo anterior, nuestra última instancia judicial ha reconocido dos limitaciones al descubrimiento de prueba. Estos son, que la información objeto del descubrimiento de prueba no sea privilegiada y que la misma sea pertinente a la controversia. Medina v. M.S. & D. Química P.R., Inc., 135 DPR 716, 730-731 (1994); Ortiz

Rivera v. E.L.A., National Ins. Co, 125 DPR 65, 70 (1989); General Electric v. Concessionaires, Inc., 118 DPR 32, 38-39 (1986).

Así, debemos recordar que los foros primarios gozan de amplia discreción para regular el descubrimiento de prueba, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros, supra; Cruz Flores et al. v. Hosp. Ryder et al., supra. Por esa razón, este Tribunal de Apelaciones no debe intervenir con dicha discreción; salvo que medie prejuicio, parcialidad o error manifiesto en la aplicación de una norma procesal o sustantiva. Rivera Durán v. Banco Popular de P.R., supra, págs. 154-155.

### III.

En su discusión del primer error, argumenta la Recurrente que erró el TPI al concluir que el término del cargo de ejecutor comenzaba desde la fecha que suscribieron las cartas testamentarias, pues según el artículo 1752 del Código Civil, *supra,* comenzaba a correr desde la aceptación del cargo. Además, alega que se equivocó el foro primario al permitir que continúen los Recurridos en su cargo hasta la celebración de una vista evidenciaria. Por otra parte, los Recurridos arguyen que el foro primario erró al determinar que el término del cargo de ejecutor comienza a correr desde la emisión de las cartas testamentarias, y, además, erró al determinar, sin fundación alguna, que la aceptación del cargo de ejecutor fue el 17 de noviembre de 2021. Para sustentar su alegación presentaron la Escritura Pública de Aceptación del Cargo de Ejecutor Universal otorgada el 6 de abril de 2022 ante el Notario Ignacio Arbona Arbona. Añadió que, al no probar la Recurrente que hubo una aceptación tácita previa a la fecha de la escritura, el término comenzó el 6 de abril de 2022.

Resolvemos que el TPI erró al determinar que el término del cargo de ejecutor empieza a correr desde la expedición de las cartas testamentarias toda vez que el artículo 1752 del Código Civil, *supra,* claramente indica que el término comienza una vez los ejecutores aceptan el cargo. Dejándonos llevar por la fecha de la escritura de aceptación que fue otorgada el 6 de abril de 2022, es forzoso concluir que el término culminó el 6 de abril de 2024 al considerar la prórroga extrajudicial. Sin embargo, el artículo 1755 del Código Civil, *supra,* le otorga autoridad al Tribunal para extender el término según las necesidades particulares del caso. Por tanto, resolvemos que actuó dentro de su discreción el foro primario al extender el cargo, y en adición tomar la precaución de prohibir cualquier enajenación de los bienes del caudal, hasta la celebración de una vista evidenciaria, para la cual ya señaló fecha.

Continuamos con la discusión del segundo señalamiento de error. La Recurrente arguye que erró el foro primario al concluir que los informes presentados hasta la actualidad cumplen con los requisitos mínimos de mantener informados a los herederos. Fundamenta su alegación en los comentarios del Artículo 1767 del Código Civil, *supra,* que indica que deben ser "cuentas detalladas y justificadas con evidencia (comprobantes, recibos, estados de cuenta, etc.) de modo que pueda corroborarse su certeza, para quien no esté de acuerdo con las cuentas … pueda incoar la acción judicial correspondiente". Añaden que no fue hasta la fecha correspondiente a la presentación de tercer trimestre, el 15 de julio de 2022, que se presentó el informe que cubre el tiempo desde que aceptaron el cargo. Los Recurridos arguyen que los informes presentados incluyen gestiones detalladas sobre los actos de administración realizados, incluyendo el inventario actualizado. También argumentan que el texto del Artículo 1767 del Código Civil, *supra,* no requiere que los informes estén acompañados de documentación,

y que, además, los comentarios del código no obligan a los tribunales.

El Artículo 1767, *supra,* requiere que la rendición de cuentas sea "de forma detallada", mas no especifica requisitos particulares. Aunque los comentarios aclaran que la rendición de cuentas debe ser con evidencia justificativa, esto es solo una interpretación del texto de la ley y no constituye requisitos adicionales. Aclaramos que, surge de los informes presentados que los Recurridos incluyeron suficiente información para poder entender y justificar los actos de administración realizados referentes al caudal. Por tanto, concluimos que el foro primario no se extralimitó en su apreciación de la prueba al determinar que la información provista fue suficiente como para cumplir el propósito del artículo, que es mantener a los herederos informados. Añadimos que, como discutiremos a continuación, las partes tienen la capacidad de solicitar información adicional de estar insatisfechos con la información provista. Además, como indicaremos en la discusión del cuarto error, como los procesos continúan ante el Tribunal de Primera Instancia, y este solicitó un informe para el 15 de abril de 2024, sería prematuro determinar que han incumplido con el requisito de mantener a los herederos informados hasta la actualidad.

Con relación al tercer señalamiento de error, la Recurrente alega que la información y evidencia justificativa de las gestiones realizadas por los ejecutores tienen que ser producidas a los herederos como parte del deber ineludible de rendir cuentas detalladas, y que requerir que se realice mediante los mecanismos de descubrimiento de prueba va en contra de la letra y espíritu del Artículo 1767 del Código Civil, *supra*. Añade que la determinación del TPI también contradice lo decidido en la *Sentencia* de esta Curia, que constituye la ley del caso, ya que en el caso KLAN202300294 se

resolvió que la información debe fluir de forma armoniosa entre los herederos. Por su parte, los Recurridos argumentan que este señalamiento es académico pues la Recurrente activó mecanismos de descubrimiento de prueba luego de la presentación del presente recurso de *certiorari.* En la alternativa, entienden que el proceso de descubrimiento de prueba es el adecuado para que la Recurrente tenga acceso a información adicional a la que se encuentra en los informes.

La *Sentencia* de este Tribunal en el caso KLAN202300294 no discute ampliamente la información que sería compartida entre las partes. En lo pertinente al tema, la *Sentencia* indica en su pág. 22 que luego de que los Recurridos entreguen el informe a todos los herederos que no son ejecutores "el TPI tiene que mantener el intercambio de información entre los herederos, de forma que se permita armonizar los intereses de las partes y solo ello permitirá lograr la partición de la herencia lo antes posible." Nótese que esta expresión no prohíbe que el TPI utilice los mecanismos de descubrimiento de prueba para que las partes tengan acceso a la información deseada. La expresión es más una reiteración del mandato de la *Sentencia* de que el TPI mantenga una supervisión sobre el caso debido a su complejidad. Resolvemos que ordenar a la Recurrente a emplear los mecanismos de descubrimiento de prueba para solicitar información que no surge de los informes no resulta incorrecto en derecho ni fuera de la discreción del TPI.

A continuación, el cuarto y último señalamiento de error. Argumenta la Recurrente que el TPI no ha cumplido con las directrices de este Tribunal de ejercer supervisión sobre la administración del caudal según lo ordenado por esta Curia en el caso KLAN202300294. Alega que no se ha celebrado una vista concerniente a la prórroga del término del cargo de ejecutor, no se han requeridos los informes trimestrales, ni se ha fomentado el

intercambio de información entre las partes. Por su parte, los Recurridos indican que el TPI ha atendido mociones, ha emitido órdenes y celebrado vistas que indican un avance en los procedimientos con el fin de lograr la partición del caudal, y que la Recurrente levanta este señalamiento de error por el mero hecho de estar insatisfecha con las determinaciones del foro.

La realidad es que, este recurso se presenta en un momento cuando el foro inferior se encuentra atendiendo el caso de acuerdo con lo establecido en la *Sentencia* KLAN202300294. Como mencionamos, ya están señaladas las fechas de la próxima vista evidenciaria donde el foro primario se expresará sobre la prórroga del término del cargo de ejecutor. Asimismo, el foro primario ordenó que los Recurridos tienen hasta el 15 de abril de 2024 para presentar un informe con las gestiones realizadas hasta el momento. Concluir en este momento que el TPI ha incumplido con las órdenes de este Tribunal cuando el foro primario se encuentra emitiendo órdenes y señalando vistas sería una intervención prematura de nuestra parte, por tanto, no podemos revocar la *Resolución* y concluir que el TPI no está supervisando el trámite del caso con el fin de proteger los derechos de todas las partes.

**IV.**

Por los fundamentos antes expuestos, expedimos el recurso de *certiorari* y confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones