Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DOMINGO ARTURO QUILES ROSADO<br><br>Parte Apelante<br><br>v.<br><br>SUCESIÓN CÉSAR VÁZQUEZ NAVARRO Y OTROS<br><br>Parte Apelada | TA2025AP00205 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2022CV06536<br><br>Sobre: Cobro de Dinero – Ordinario y otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de septiembre de 2025.

El 28 de abril de 2025, el Tribunal de Primera Instancia (TPI, foro primario o foro apelado), Sala Superior de San Juan, pronunció una *Sentencia Parcial*, notificada y archivada en autos el 29 de abril de 2025.[1] Mediante esta determinación, el foro primario declaró *ha lugar* a la solicitud de sentencia sumaria presentada por la Sucesión César Vázquez Navarro (Sucesión Vázquez Navarro o Sucesión), compuesta por los señores César, Iván, Javier y Johan, todos de apellidos Vázquez Morales, y la señora Celinda H. Morales Figueroa (en conjunto, apelados). Consecuentemente, desestimó la causa de acción de epígrafe presentada por el licenciado Domingo Arturo Quiles Rosado (Lcdo. Quiles o apelante) contra la Sucesión.

Mediante el recurso de apelación incoado el 4 de agosto de 2025, el Lcdo. Quiles nos solicita que revoquemos la *Sentencia*

---

[1] *Sentencia Parcial*, SUMAC en el caso SJ2022CV06536, entrada 149.

*Parcial*, se den por admitidos los hechos contenidos en el Requerimiento de Admisiones y que se ordene la continuación de los procedimientos, ordenándole a la Sucesión la producción de documentos solicitados para oponerse adecuadamente a su petitorio sumario.[2]

El 11 de septiembre de 2025, la Sucesión Vázquez Navarro presentó su *Oposición a la Apelación.*[3]

Examinados los escritos a la luz del derecho aplicable y por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia Parcial* apelada.

**I.**

El 20 de julio de 2022, el Lcdo. Quiles presentó una *Demanda* contra la Sucesión Vázquez Navarro, General Builders Construction Corp. (General Builders) y Bosque del Plata Development Corp. (Bosque del Plata).[4] Arguyó que, desde el 10 de abril de 2010 al 8 de marzo de 2018, representó a los demandados y a su fiadora, United Surety & Indemnity Company (USIC) en un pleito de construcción instado contra ellos por Benkar Construction & Development, Corp. (Benkar o Benkar Construction). Argumentó que, debido a la mencionada contienda, le adeudaban un balance acumulado de $100,351.78 por concepto de honorarios por los servicios profesionales rendidos. Además, alegó el incumplimiento con lo pactado en el contrato de servicios profesionales.

El 5 de abril de 2023, el señor César Vázquez Morales presentó su *Contestación a la Demanda.*[5] Arguyó que el Lcdo. Quiles fue contratado para que representara a General Builders y Bosque del Plata, no para que fungiera como su abogado personal.

---

[2] *Apelación*, SUMAC-TA del recurso TA2025AP00205, entrada 1.
[3] *Oposición a la Apelación*, *Íd.*, entrada 4.
[4] *Demanda*, SUMAC en el caso SJ20255CV06536, entrada 1.
[5] *Contestación a la Demanda*, *Íd.*, entrada 18.

Similarmente, el 26 de abril de 2023, el resto de los apelados presentaron su *Contestación a la Demanda*.[6] Alegaron que nunca fueron parte del pleito contra General Builders y Bosque del Plata, y que nunca contrataron al Lcdo. Quiles para que los representara en su carácter personal. Lo mismo sostuvieron las corporaciones en su respectiva contestación, la cual fue presentada el 27 de octubre de 2023.[7]

El 18 de septiembre de 2023, el 13 de diciembre de 2023 y el 14 de diciembre de 2023, el Lcdo. Quiles inició el proceso de descubrimiento de prueba mediante unas notificaciones cursadas a los demandados. Al este ser esto infructuoso, el 7 de febrero de 2024, el apelante radicó una moción sobre incumplimiento con el descubrimiento de prueba y alegó haber realizado esfuerzos razonables para resolver la controversia.[8]

Luego de varios trámites procesales que son innecesarios pormenorizar, la Sucesión Vázquez Navarro presentó una moción informativa el 12 de febrero de 2024.[9] Mediante esta, acreditaron haber cumplido con el descubrimiento de prueba. El Lcdo. Quiles se opuso a esta moción el 14 de febrero de 2024; alegó que no se cumplió con lo ordenado por el tribunal sobre el descubrimiento de prueba.[10]

El 30 de mayo de 2024, la Sucesión Vázquez Navarro presentó una moción de sentencia sumaria.[11] Solicitaron que el foro primario desestimara la *Demanda* con perjuicio en cuanto a los miembros de la Sucesión en su carácter personal debido a que el Lcdo. Quiles solo fungió como representante de las corporaciones involucradas y

---

[6] *Contestación a la Demanda, Íd.*, entrada 20.
[7] *Contestación a Demanda, Íd.*, entrada 38.
[8] *Moción sobre Incumplimiento con [el] Descubrimiento de Prueba [por parte de la] Condemandada Sucn. César Vázquez Navarro Bajo [la] Regla 34.2, Íd.*, entrada 70.
[9] *Moción Informativa y en Cumplimiento de Orden, Íd.*, entrada 72.
[10] *Oposición a Moción Informativa (SUMAC 72) y Reconsideración a Orden (SUMAC 73), Íd.*, entrada 74.
[11] *Moción de Sentencia Sumaria al Amparo de la Regla 36 de Procedimiento Civil, Íd.*, entrada 89.

su fiadora en el pleito con Benkar. Argumentaron que no les corresponde responder personalmente por una deuda corporativa porque las corporaciones son entidades con personalidad jurídica independiente.

El 3 de junio de 2024, el foro apelado pronunció una orden notificada el 4 de junio de 2024, mediante la cual expresó que no se atendería el petitorio dispositivo incoado por la Sucesión mientras subsistiera la controversia sobre el descubrimiento de prueba y hasta luego de celebrada una vista sobre el asunto convocada para el 26 de junio de 2024.[12] Luego, la audiencia aludida se pospuso en varias ocasiones, pero no se llegó a celebrar.

Seguidamente, el 31 de octubre de 2024, el TPI le concedió un término de quince (15) días a los apelados para que estos respondieran a los interrogatorios cursados y, a su vez, uno de treinta (30) días a partir del recibo al Lcdo. Quiles para que presentara su oposición a la solicitud de sentencia sumaria.[13]

En respuesta a esto, el 15 de noviembre de 2024, la Sucesión informó que, en ese día, había cursado al apelante las contestaciones a los interrogatorios de los miembros restantes.[14] Por ello, el 18 de febrero de 2025, el foro primario le ordenó al Lcdo. Quiles que presentara su oposición a la moción de sentencia sumaria en o antes del 15 de diciembre de 2024; así, dio por sometida la solicitud de sentencia sumaria de la Sucesión.[15]

Así, el 29 de abril de 2025, el foro primario dictaminó una *Sentencia Parcial* mediante la cual declaró *ha lugar* a la solicitud de sentencia sumaria incoada por la Sucesión Vázquez Navarro; consecuentemente, desestimó la causa de acción del caso de

---

[12] *Orden, Íd.*, entrada 90.
[13] *Orden, Íd.*, entrada 106.
[14] *Moción Informativa y en Cumplimiento de Orden, Íd.*, entrada 111.
[15] *Orden, Íd.*, entrada 113.

epígrafe en cuanto al carácter personal de los miembros de la Sucesión.[16]

Tras evaluar la petición y los documentos acompañados, el foro apelado procedió a formular las siguientes determinaciones de hechos:

1. Ninguno de los miembros que componen la sucesión del señor César Vázquez Navarro fueron parte, ni como demandante ni como demandada, en el caso *Benkar Construction & Development Corp. v. General Builders Construction Corporation, Bosque del Plata Development Corporation y USIC*, Civil Número G CD2009-0241, por el cual el Lcdo. Quiles Rosado reclama honorarios de abogado en el caso de autos.

2. No existe un contrato escrito entre el demandante y cualquiera de los miembros de la Sucesión Vázquez Navarro para la representación legal de estos en el caso *Benkar Construction & Development Corp. v. General Builders Construction Corporation, Bosque del Plata Development Corporation y USIC*, Civil Número G CD2009-0241.

3. El Lcdo. Quiles Rosado no representó, ni fue abogado, ni le prestó servicios legales a ninguno de los miembros de la Sucesión del Sr. Cesar Vázquez Navarro en su carácter personal, en el caso, *Benkar Construction & Development Corp. v. General Builders Construction Corporation, Bosque del Plata Development Corporation y USIC*, Civil Número G CD2009- 0241.

4. En el caso, *Benkar Construction & Development Corp. v. General Builders Construction Corporation, Bosque del Plata Development Corporation y USIC*, Civil Número G CD2009- 0241, por el cual el demandante reclama honorarios de abogado, el demandante Quiles Rosado representó exclusivamente a las corporaciones General Builders, Bosque del Plata y USIC.

5. La corporación demandada en el caso de autos, General Builders Construction Corp., está activa en el Departamento de Estado de Puerto Rico.

6. La corporación demandada en el caso de autos, Bosque del Plata Development Corp., está activa en el Departamento de Estado de Puerto Rico.

7. La Sucesión del Sr. César Vázquez Navarro no es la dueña, ni titular, de las acciones corporativas de la corporación demandada Bosque del Plata Development Corp.

---

[16] *Sentencia Parcial, Íd.*, entrada 149.

8. El presidente y representante autorizado de las corporaciones General Builders Construction Corp. y Bosque del Plata Development Corp. es el Lcdo. César Vázquez Morales.

9. La Sucesión del Sr. Cesar Vázquez Navarro no contrató los servicios del demandante para que actuara como abogado en el caso de Benkar Construction.

10. En el caso de Benkar Construction, el Lcdo. César Vázquez Morales siempre actuó, exclusivamente, en su capacidad como oficial y presidente de las corporaciones General Builders y Bosque del Plata.[17]

A juicio del foro primario, no existía un contrato escrito entre el Lcdo. Quiles y la Sucesión o alguno de sus miembros para representarles en el caso de *Benkar v. General Builders, Bosque del Plata y USIC*. Concluyó así que el apelante ni tuvo un vínculo contractual con el causante ni con algún miembro de la Sucesión, en su carácter personal, relacionado con el caso de *Benkar*. Con esto, precisó que el Lcdo. Quiles "representó exclusivamente a las corporaciones General Builders, Bosque del Plata y USIC" en ese pleito y, como las corporaciones son entidades con personalidad jurídica propia, distinta e independiente de sus accionistas, corresponde la desestimación contra los miembros de la Sucesión en su carácter personal.[18] Por último, enfatizó que el apelante no se opuso oportunamente a la solicitud de sentencia sumaria, aunque el foro apelado le concedió un término adicional para presentar su desacuerdo con el petitorio dispositivo.

Así, mediante el dictamen pronunciado, se declaró *ha lugar* a la *Moción de Sentencia Sumaria al Amparo de la Regla 36 de Procedimiento Civil* presentada por la Sucesión Vázquez Navarro. A base de los hechos incontrovertidos y la prueba analizada, el TPI dictaminó que ninguno de los miembros de la Sucesión fue parte, en su carácter personal, en el caso de *Benkar* y que ninguno de ellos

---

[17] *Íd.*, págs. 5-6.
[18] *Sentencia Parcial*, SUMAC en el caso SJ20255CV06536, entrada 149, págs. 12-13.

contrató al Lcdo. Quiles para que los representara o rindiera servicios legales a su favor. Es decir, el apelante *solo* representó a las corporaciones y a su fiadora en el pleito del cual se origina el alegado incumplimiento contractual. Además, esbozó que el Lcdo. César Vázquez Morales fungió *únicamente* como oficial autorizado y presidente de las corporaciones representadas, General Builders y Bosque del Plata, en sus negociaciones con el Lcdo. Quiles. Por último, trazó que la Sucesión no era dueña o titular de las acciones corporativas del Bosque del Plata.

Inconforme con dicho dictamen, el Lcdo. Quiles presentó una moción de reconsideración el 14 de mayo de 2025.[19] Esta fue declarada no ha lugar mediante *una Resolución Interlocutoria* pronunciada el 2 de julio de 2025 y notificada el 3 de julio de 2025.[20]

Insatisfecho aún, el Lcdo. Quiles presentó un recurso de apelación ante esta Curia el 4 de agosto de 2025 y señaló que el TPI cometió los siguientes errores:

> Erró el Tribunal de Primera Instancia al dictar sentencia sumaria a favor de la parte apelada en circunstancias en las cuales existía una controversia real sobre un hecho material relativo a la existencia de un contrato verbal de servicios profesionales entre las partes, acreditado en la Moción de Reconsideración de Sentencia Sumaria, denegada por el TPI y además en circunstancias en que los apelados no habían cumplido con el descubrimiento de prueba necesario para que el apelante pudiera oponerse adecuadamente.
>
> Erró el Tribunal de Primera Instancia al no compeler a la parte apelada a cumplir con su obligación de contestar el descubrimiento de prueba, afectando así el derecho del apelante a un descubrimiento amplio y liberal, en clara violación al debido proceso de ley.
>
> Erró el Tribunal de Primera Instancia al conceder a la parte apelada una prórroga para responder a un requerimiento de admisiones, a pesar de que no se justificó la misma conforme al requisito de justa causa, en contravención de lo dispuesto en las Reglas de Procedimiento Civil.

---

[19] *Moción de Reconsideración de [la] Sentencia Parcial y de [la] Orden en SUMAC 150, Íd.*, entrada 153.
[20] *Resolución Interlocutoria, Íd.*, entrada 170.

El 11 de septiembre de 2025, la Sucesión Vázquez Navarro presentó su *Oposición a la Apelación*.[21] Mediante esta, argumentaron que el apelante no fundamentó con suficiencia porqué se debería revocar la Sentencia Parcial. Además, enfatizó que el pleito continuaría contra las corporaciones Bosque del Plata y General Builders.

## II.

## A.

Es harto conocido que el mecanismo procesal de la sentencia sumaria se rige por la Regla 36.1 de las de Procedimiento Civil.[22] El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario.[23] De esta forma, se promueve la descongestión de calendarios.[24]

Por medio de este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta.[25] Sin embargo, la sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros: cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y que solo reste por disponer las controversias de derecho existentes.[26]

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la polémica.[27] Por hechos materiales se entienden

---

[21] *Oposición a la Apelación*, SUMAC-TA en el recurso TA2025AP00205, entrada 4.
[22] Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1.
[23] *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).
[24] *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).
[25] *Íd.*, pág. 332.
[26] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).
[27] Regla 36.1 de las de Procedimiento Civil, *supra; Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).

aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo.[28] De igual modo, la parte promovente puede presentar una sentencia sumaria por insuficiencia de prueba si demuestra que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial, y (3) procede como cuestión de derecho.[29]

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real por lo cual cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria.[30] En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales.[31] De esta manera, la parte promovida debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición.[32] Es decir, "**la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa**".[33] **No puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa**.[34] En síntesis, ha quedado establecido que los tribunales no pueden dictar sentencia sumaria en cuatro (4) situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de

---

[28] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[29] *Pérez v. El Vocero de PR*, 149 DPR 427, 446-447 (1999).
[30] *Meléndez González et al. v. M. Cuebas*, supra, pág. 110.
[31] *Íd.* (*citando a Ramos Pérez v. Univisión*, supra, pág. 214).
[32] *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020).
[33] *Íd.* (Énfasis suplido).
[34] Regla 36.3 (c) de las de Procedimiento Civil, *supra*, R. 36.3 (c); véase *SLG Zapata-Rivera v. JF Montalvo*, supra, pág. 452-453; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

sentencia sumaria que existe una controversia sobre algún hecho material o esencial, o (4) cuando no procede como cuestión de derecho.[35]

Entretanto, la Regla 36.3 de las de Procedimiento Civil, *supra*, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida.[36] Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3 (a) de las de Procedimiento Civil dispone que la misma tiene que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.[37]

Mientras tanto, la Regla 36.3 (b) de las de Procedimiento Civil prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.[38] Asimismo, cuando se presente una solicitud de sentencia sumaria conforme a la Regla

---

[35] *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).
[36] Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3.
[37] *Íd.*, R. 36.3 (a).
[38] *Íd.*, R. 36.3 (b).

36 de las de Procedimiento Civil "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede".[39]

En esa misma línea, la juzgadora o el juzgador de los hechos debe evaluar la prueba presentada para determinar cuáles hechos han quedado demostrado sujeto a que "[e]l peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes";[40] "[l]a obligación de presentar evidencia primariamente recae sobre la parte que sostiene la afirmativa en el asunto en controversia";[41] y, en casos civiles, la decisión de la juzgadora y el juzgador se realizará mediante la preponderancia de la prueba conforme a criterios de probabilidad.[42] La preponderancia de la prueba ha sido definida como cuando se establece "como hechos probados que con mayores probabilidades ocurrieron".[43]

De otra parte, nuestro Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.[44]

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de las de Procedimiento Civil,[45] al igual que los criterios que la jurisprudencia le exige al foro primario. Asimismo, debe examinar el expediente de

---

[39] *Íd.*, R. 36.3 (c).
[40] Regla 110 (A) de Evidencia, 32 LPRA Ap. VI, R. 110 (A).
[41] *Íd.*, R. 110 (B).
[42] *Íd.*, R. 110 (F).
[43] *Berríos v. U.P.R.*, 116 DPR 88, 101 (1985) (citando a *Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980)).
[44] *Meléndez González et al. v. M. Cuebas*, supra.
[45] Regla 36 de las de Procedimiento Civil, *supra.*

la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, nuestro máximo foro reconoció que el foro apelativo está limitado, toda vez que no puede tomar en consideración evidencia que las partes ni presentaron ante el foro primario ni adjudicar los hechos materiales en controversia.[46]

En segundo lugar, señaló que el Tribunal de Apelaciones debe revisar que tanto la moción en solicitud de sentencia sumaria como la oposición cumplan con los requisitos de forma codificados en la Regla 36 de las de Procedimiento Civil.[47]

En tercer lugar, ordenó que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de las de Procedimiento Civil.[48]

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho a la controversia.[49]

**B.**

La Regla 23 de las de Procedimiento Civil dispone lo relacionado al descubrimiento de prueba: "[e]l descubrimiento de prueba persigue [...]: (1) minimizar las controversias litigiosas; (2) obtener la evidencia que va a ser utilizada durante el juicio, evitando así posibles sorpresas; (3) facilitar la búsqueda de la verdad, y (4) perpetuar evidencia".[50]

---

[46] *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.
[47] *Íd.*; Regla 36 de las de Procedimiento Civil, *supra.*
[48] *Meléndez González et al. v. M. Cuebas*, supra, pág. 118; 32 LPRA Ap. V, R. 36.4.
[49] *Meléndez González et al. v. M. Cuebas*, supra, pág. 119.
[50] 32 LPRA Ap. V, R. 23; *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 203 2023); *Berríos Falcón v. Torres Merced,* 175 DPR 962, 971 (2009); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 152 (2000).

Nuestras Reglas de Procedimiento Civil "proveen una serie de mecanismos que las partes pueden utilizar para descubrir, obtener o perpetuar la prueba necesaria para sustanciar sus alegaciones en el acto del juicio".[51]

Es norma reiterada que el descubrimiento de prueba debe ser amplio y liberal.[52] En virtud de ello, la Regla 23.1 (a) de las de Procedimiento Civil, *supra*, establece lo siguiente:

> El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:
>
> (a) *En general*. Las partes podrán hacer descubrimiento sobre **cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente**, ya se refiera a la reclamación o defensa de cualquier otra parte, (…). No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.[53]

Es decir, el descubrimiento de prueba está limitado a dos aspectos: (1) que el asunto que se pretende descubrir sea pertinente a la controversia que se dirime, y (2) que no sea materia privilegiada.

El concepto de pertinencia se debe interpretar en términos amplios.[54] Por lo tanto, para que una materia pueda ser objeto de descubrimiento de prueba, basta con que exista una posibilidad razonable de relación con el asunto en controversia.[55] No obstante, "[e]l concepto de pertinencia tiene que interpretarse de manera cónsona con el principio rector de las reglas procesales: lograr la solución de las controversias de forma justa, rápida y económica".[56]

Por su parte, la materia privilegiada es "aquella que se encuentra dentro del alcance de alguno de los privilegios

---

[51] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 490 (2019) (citando a *Rivera y Otros v. Bco. Popular*, supra, págs. 151-152).
[52] *Rivera et al. v. Arcos Dorados et al., supra*; *Scotiabank v. ZAF Corp. et al.*, supra.
[53] 32 LPRA Ap. V, R. 23.1 (a). (Énfasis suplido).
[54] *ELA v. Casta*, 162 DPR 1, 12 (2004).
[55] *Íd.*, pág. 13.
[56] *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 40 (1986).

reconocidos en las Reglas de Evidencia".[57] La materia privilegiada, aunque fuera pertinente, queda excluida del alcance del descubrimiento de prueba.[58]

Los tribunales tienen amplia discreción para regular el ámbito del descubrimiento de prueba, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes.[59] La Regla 23.2 de las de Procedimiento Civil, *supra*, permite limitar el descubrimiento de prueba y autoriza al foro primario a emitir órdenes dirigidas a proteger a las partes u otras personas de hostigamiento, perturbación, opresión y gastos o molestias indebidas en el desarrollo del descubrimiento de prueba.[60] Específicamente, la Regla 23.2 de las de Procedimiento Civil, *supra*, dispone, en lo pertinente, que:

> (a) El tribunal, a iniciativa propia o a solicitud de parte, podrá limitar el alcance de los métodos de descubrimiento de prueba si determina lo siguiente:
>
> (1) Que la prueba que se pretende descubrir es un duplicado de otra prueba o es irrazonablemente acumulativa;
>
> (2) que la prueba puede obtenerse mediante otra forma más conveniente, menos onerosa y costosa para la parte a quien se le solicita;
>
> (3) que la parte que solicita la prueba haya tenido oportunidad de obtenerla, o
>
> (4) que los costos para obtener la prueba exceden el beneficio que ésta puede aportar al caso.
>
> (b) A solicitud de una parte o de la persona en relación con la cual se utiliza el descubrimiento, presentada mediante moción acompañada, de una certificación indicativa de que esta ha intentado de buena fe resolver la controversia sobre el descubrimiento conforme lo dispuesto en la Regla 34.1 de este apéndice, y por justa causa, el tribunal podrá emitir cualquier orden que requiera en justicia para proteger a dicha parte o persona de hostigamiento, perturbación u opresión, así como cualquier molestia o gasto indebido…[61]

---

[57] *Ponce Adv. Med. v. Santiago González et al.*, 197 DPR 891, 899 (2017).
[58] *Íd.*
[59] *Rivera et al. v. Arcos Dorados et al.,* supra, págs. 203-204; *Rivera y otros v. Bco. Popular*, 152 DPR 140, 154 (2000).
[60] *Ortiz Rivera v. ELA*, 125 DPR 65, 70–71 (1989).
[61] 32 LPRA Ap. V, R. 23.2.

Cónsono con lo anterior, y como parte de la discreción concedida a los foros primarios en torno al descubrimiento de prueba, estos están facultados para dictar cualquier orden que entienda justa o necesaria respecto a alguna parte que se negase a descubrir lo solicitado u ordenado.

**III.**

En el caso de marras, debemos resolver si procedía desestimar la acción de cobro de dinero e incumplimiento contractual incoada por el Lcdo. Quiles contra la Sucesión Vázquez Navarro. Además, nos corresponde determinar si el foro primario erró al declarar *ha lugar* a la *Moción de Sentencia Sumaria al Amparo de la Regla 36 de Procedimiento Civil* presentada por la Sucesión.

El Lcdo. Quiles planteó que el foro primario estaba impedido de dictar sentencia sumaria a favor de la Sucesión porque habían hechos en controversia que se debían dirimir en un juicio. Además, adujo que era una violación de su debido proceso de ley dar por sometida la petición de sentencia sumaria sin que se hubiesen resuelto las controversias sobre el descubrimiento de prueba relacionados al incumplimiento de la Sucesión que le impidieron oponerse oportunamente a la moción presentada.

Por estar íntimamente relacionados, discutiremos los errores apuntalados en conjunto.

Como hemos expuesto anteriormente, el primer y segundo paso del estándar que este Tribunal debe utilizar para revisar la concesión o denegatoria de una solicitud de sentencia sumaria es una revisión *de novo* del expediente del caso de epígrafe y corroborar que tanto la solicitud como la oposición a sentencia sumaria cumplan con los requisitos de la Regla 36 de las de Procedimiento Civil.[62] De una lectura cuidadosa de la solicitud de sentencia

---

[62] Regla 36 de las de Procedimiento Civil, *supra.*

sumaria presentado por la Sucesión Vázquez Navarro, **colegimos que estos *cumplen* con los requisitos dispuestos por la Regla 36.3 (a) de las de Procedimiento Civil, *supra*.**[63] Específicamente, la petición contiene una exposición breve de las alegaciones de las partes; los asuntos litigiosos o en controversia; la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; una relación concisa, organizada y en párrafos enumerando todos los hechos pertinentes y esenciales sobre los cuales no existe controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible, así como cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal, las razones por la cuales debe ser dictada la sentencia sumaria con derecho aplicable y el remedio que debe ser concedido.

Como tercer y cuarto paso de nuestro análisis, debemos evaluar si existen hechos materiales en controversia y, de existir, delimitarlos. De no haber hechos en controversia, procede que revisemos *de novo* si el foro primario aplicó correctamente el derecho.

En el presente caso, después de un examen cuidadoso de la solicitud de sentencia sumaria, sus documentos complementarios y el resto del expediente, concluimos que no existen hechos materiales en controversia o que pudiesen afectar el resultado de las reclamaciones de acuerdo con el derecho sustantivo aplicable.

**Según mencionamos en la sección anterior, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real, por lo cual cualquier duda es insuficiente para derrotar el petitorio sumario.** Al momento de controvertir los hechos propuestos por la otra parte, el oponente

---

[63] *Íd.*

posee el peso para presentar evidencia sustancial que apoye los hechos materiales que arguye están en controversia. **En otras palabras, *no* puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa.**

En el caso del apelante, no surge de la demanda o de la moción de reconsideración de la sentencia, junto con sus respectivos anejos, ni un solo hecho específico o documento sobre acto alguno que señale que el Lcdo. Quiles representó a alguno de los miembros de la Sucesión en su capacidad personal en el pleito de *Benkar*. El apelante estableció en su *Demanda* que fungió como representante y litigante en el caso de *Benkar* desde el **10 de abril de 2010 hasta el 8 de marzo de 2018**.[64] Sin embargo, para sustentar la alegación de que, aparte de las corporaciones General Builders y Bosque del Plata, y su fiadora USIC, representó los intereses personales de los miembros de la Sucesión en el mencionado pleito, presentó junto con su moción de reconsideración una *Declaración Jurada* y el *General Agreement of Indemnity*.[65] La *Declaración Jurada* fue suscrita por el señor Duhamel Iglesias Cacho (señor Iglesias), exvicepresidente de USIC el 7 de mayo de 2025; el señor Iglesias declaró que los cinco miembros de la Sucesión firmaron un documento mediante el cual se obligaban personalmente a garantizar la indemnización a la fiadora, de esta tener que intervenir, por el proyecto de construcción y aseguró que el Lcdo. Quiles "representó y protegió los intereses de la fiadora USIC, de las corporaciones General Builders, Bosque del Plata, y de los indemnizadores".[66] Asimismo, el *General Agreement of Indemnity* fue

---

[64] *Demanda*, SUMAC en el caso SJ20255CV06536, entrada 1.
[65] *Moción de Reconsideración de Sentencia Parcial y de Orden en SUMAC 150, Íd.*, entrada 153, anejos III y V.
[66] *Declaración Jurada, Íd.*, entrada 153, anejo III, págs. 2-3.

suscrito por los cinco miembros de la Sucesión Vázquez Navarro y dos personas más el **18 de abril de 2002**; aquí, se comprometían personalmente a indemnizar a USIC, de estos tener que intervenir por el incumplimiento de las corporaciones en el proyecto de construcción afianzado.[67]

Al analizar los mencionados documentos, razonamos que el foro primario no erró al establecer como suceso incontrovertido el hecho de que el Lcdo. Quiles no representó a la Sucesión en el caso de *Benkar*. De estos, no se desprende que el apelante haya representado a los miembros de la Sucesión Vázquez Navarro en su carácter personal. El acuerdo entre USIC y los miembros de la Sucesión es uno típico en la práctica que surge de la necesidad de asegurar la indemnización ante la intervención de una fiadora debido al incumplimiento del fiado con cierta obligación; en este caso, en un proyecto de construcción. El Lcdo. Quiles sí representó a General Builders, Bosque del Plata y USIC en la disputa instada contra ellos por Benkar Construction. Empero, es necesario enfatizar que una fianza es de naturaleza accesoria y que, realmente, con quien el abogado contrató para rendir servicios profesionales fue con las mencionadas corporaciones; aunque sí representó a USIC, esto no implica que, al hacerlo, representó los intereses personales de los miembros de la Sucesión solo porque estos firmaron un acuerdo de indemnización con la fiadora en 2002. No se presentó prueba adicional que apuntara hacia la alegación de que el Lcdo. Quiles fungía también como el abogado de la Sucesión durante el pleito de *Benkar*. Como se ha explicado, la Sucesión **no fue parte en ese caso** y esta Curia no descifra el vínculo entre el *General Indemnity Agreement*, un acuerdo *independiente* que se conviene comúnmente en la praxis para asegurar la indemnización

---

[67] *General Agreement of Indemnity, Íd.*, entrada 153, anejo V.

a la fiadora *si* esta ha de intervenir para asegurar el cumplimiento de su fiado, y el hecho de que el Lcdo. Quiles representó a USIC y a las corporaciones en un pleito por incumplimiento contractual ***de las entidades jurídicas fiadas*** en el referido proyecto.

En sentido contrario, la Sucesión logró establecer mediante senda prueba documental y declaraciones juradas el hecho de que el Lcdo. Quiles no representó a ninguno de sus miembros en su carácter personal en el pleito de *Benkar*. El Lcdo. César Vázquez Morales declaró ser el representante autorizado de las corporaciones General Builders y Bosque del Plata y aseguró haber actuado en su carácter representativo como oficial y presidente de estas en la contratación de los servicios profesionales del Lcdo. Quiles. Se evidenció, pues, que el apelante no representó a la Sucesión en el caso de *Benkar*, pleito en el cual los miembros **no fueron parte**. Así, la acción de incumplimiento contractual no procedería contra la Sucesión Vázquez Navarro, más sí contra las corporaciones representadas. Colegimos, pues, que el foro primario no erró al declarar ha lugar a la solicitud de sentencia sumaria de la Sucesión y desestimar la demanda a su favor.

Por último, consideramos que el foro apelado no incidió al concederle una prórroga a la Sucesión para responder al requerimiento de admisiones y, según el apelante, al no compeler su contestación al descubrimiento de prueba.

Nuestro ordenamiento le concede una amplia discreción al TPI para regular el descubrimiento de prueba. Al ejercer tal facultad, está compelido a interpretar el concepto de pertinencia de manera cónsona con el objetivo de lograr una solución justa, rápida y económica de las controversias planteadas. Así, tiene la facultad de emitir órdenes que protejan a las partes y que, a su vez, se garantice una solución pronta y justiciera del pleito.

Una de las facultades que tiene el TPI durante el descubrimiento de prueba es la imposición de sanciones cuando alguna parte incumple con las órdenes vertidas por el foro primario. Específicamente, la Regla 34.3 (d) de las de Procedimiento Civil, *supra*, preceptúa que:

> (d) Si la parte promovente del descubrimiento de prueba pertinente a las alegaciones o defensas justifica con prueba fehaciente que la parte promovida se niega a descubrir lo solicitado por haber destruido o incumplido con su deber de preservar prueba pendiente de litigio o razonablemente utilizable en un pleito futuro, estará sujeta a las sanciones dispuestas en estas reglas.[68]

Es decir, si no se descubre lo solicitado por una parte, el tribunal puede proceder a imponer la sanción económica que crea adecuada luego de ordenarle a la otra parte que cumpla.

En este caso, el apelante alegó que erró el TPI al no compeler a la Sucesión Vázquez Navarro al cumplimiento con el descubrimiento de prueba. Empero, el 5 de septiembre de 2024, el foro primario sancionó por $35.00 a las partes en el pleito por no haber cumplido con la *Orden* pronunciada el 12 de agosto de 2024, la cual le concedía diez (10) días a las partes para presentar una moción conjunta sobre el estado procesal del caso.[69] Asimismo, el foro apelado le ordenó posteriormente a la Sucesión a cumplir con la sanción impuesta.[70] Además, les otorgó un término reducido de cinco (5) días para acreditar el envío de las contestaciones al interrogatorio cursado por el Lcdo. Quiles.[71] Colegimos, pues, que el TPI no cometió el error imputado, debido a que sí compelió a la Sucesión para que cumpliese con el descubrimiento de prueba en múltiples ocasiones.

Por otro lado, una de las determinaciones interlocutorias que puede emitir el foro primario es la concesión de una o varias

---

[68] 32 LPRA Ap. V, R.34.3 (d).
[69] *Orden*, SUMAC en el caso SJ20255CV06536, entradas 95 y 96.
[70] *Orden*, *Íd.*, entrada 106.
[71] *Orden*, *Íd.*, entrada 113.

prórrogas a las partes para que contesten o produzcan los documentos necesarios para continuar con los trámites, si entiende que esto es justo y necesario. Para la concesión de una prórroga, es necesario acreditar justa causa.[72]

El apelante arguyó que el foro primario erró al concederle una prórroga a la Sucesión para que estos produjeran el requerimiento de admisiones y que, por ende, se debían admitir según escritas. Argumentó específicamente que no se satisfizo el requisito de justa causa para otorgar el término, debido a que la abogada de la Sucesión informó que no había tenido la oportunidad de reunirse con sus representados debido a que su hija llevaba una semana con influenza sin prueba escrita que lo evidenciara.[73]

Entendemos que es innecesario inmiscuirnos en la prerrogativa del foro apelado de concederle una prórroga a la Sucesión Vázquez Navarro,[74] debido a que el tribunal tiene discreción para regular ampliamente el descubrimiento de prueba y conceder términos adicionales si, a su juicio, se cumple con el requisito de justa causa. El TPI no abusó de su discreción al conferirle una prórroga a la Sucesión en esa ocasión.

En consecuencia, se confirma la fundamentada *Sentencia Parcial* apelada.

## IV.

En virtud de lo anterior, *se confirma* la *Sentencia Parcial* apelada. Se devuelve el caso al TPI para la continuación de los procedimientos contra las corporaciones General Builders y Bosque del Plata.

**Notifíquese.**

---

[72] 32 LPRA Ap. V, R. 6.6.
[73] *Moción de Prórroga*, SUMAC en el caso SJ20255CV06536, entrada 24.
[74] *Orden, Íd.,* entrada 31.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones